USCA1 Opinion

 

 January 20, 1993 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 92-1117 NENH PHETOSOMPHONE, Plaintiff, Appellant, v. ALLISON REED GROUP, INC. d/b/a TECHNI-CRAFT PLATING, NOEL SMITH AND CAROL MARSELLA, Defendants, Appellees. _____________________ No. 92-1118 GARY SHOWALTER, Plaintiff, Appellant, v. ALLISON REED GROUP, INC. d/b/a/ TECHNI-CRAFT PLATING, NOEL SMITH AND CAROL MARSELLA, Defendants, Appellees. ____________________ APPEALS FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF RHODE ISLAND [Hon. Ronald R. Lagueux, U.S. District Judge] ___________________ ____________________ Before Torruella, Circuit Judge, _____________ Aldrich, Senior Circuit Judge, ____________________ and Boudin, Circuit Judge. _____________ ____________________ Susan Deveney with whom Michael R. Hagopian was on brief for ______________ _____________________ appellants. Elizabeth A. Del Padre for appellee Noel Smith. ______________________ Steven A. Robinson with whom Shayle Robinson was on brief for ___________________ ________________ appellee Allison Reed Group, Inc. d/b/a/ Techni-Craft Plating. ____________________ ____________________ BOUDIN, Circuit Judge. Gary Showalter and Nenh ______________ Phetosomphone, plaintiffs in the district court, appeal from that court's award of attorneys' fees following their successful Title VII suit. Because we conclude that the district court did not abuse its considerable discretion in determining an appropriate fee award, we affirm. I. Plaintiffs brought separate suits, later consolidated for trial, against Allison Reed Group, Inc. ("Allison Reed"), Noel Smith and Carol Marsella, alleging that plaintiffs were the victims of sexual harassment in the workplace. In their complaints, plaintiffs sought equitable and declaratory relief and back pay under Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e et seq., as well as compensatory __ ____ damages under Rhode Island law for the tort of intentional infliction of emotional distress. Plaintiffs' tort claim against Smith and Marsella was tried to a jury, and the Title VII claim against Allison Reed and Smith was tried simultaneously to the court.1 The jury returned a verdict in favor of defendants on the state-law claim. The court ruled, however, that plaintiffs had established a claim of sexual harassment under Title VII ____________________ 1The district court directed a verdict for Allison Reed on the state-law count at the close of plaintiffs' case. The court also ruled that Marsella was not a statutory "employer" under Title VII and was therefore not a proper defendant with respect to that count. -2- -2- against Allison Reed and Smith. The court ordered defendant Allison Reed to establish a procedure for claims of sexual harassment, and enjoined it from allowing future sexual harassment of Showalter should he return to work.2 The court found that Phetosomphone had been constructively discharged as a result of the sexual harassment and had been out of work for eight weeks, and it awarded him back pay of $1,737.60 plus prejudgment interest. The factual and procedural background of this case and the court's rulings on the merits are set forth in detail in Showalter v. Allison _________ _______ Reed Group, Inc., 767 F. Supp. 1205 (D.R.I. 1991). ________________ After its decision on the merits, the district court invited plaintiffs to submit an application for costs and attorneys' fees pursuant to 42 U.S.C. 2000e-5(k). The court stated that "[t]he application for counsel fees must be supported by a detailed, contemporaneous accounting of the time spent by the attorneys on this case." 767 F. Supp. at 1215. Plaintiffs' counsel submitted an application seeking attorneys' fees and costs totalling $83,177. The district court held a hearing on the application, and directed ____________________ 2At the time of trial, Showalter was out of work due to a back injury and was receiving worker's compensation. Because Showalter had not left his employment because of the harassment but rather on account of the injury, the court held that Showalter was not entitled to back pay. The court awarded Showalter $1 in nominal damages. -3- -3- plaintiffs to submit additional documentation in support of their claim. The district court ultimately allowed only $12,762 in fees and $240 in costs. The court issued a 13-page opinion explaining in detail its reasons for sharply limiting the award both as to hours allowed and the hourly rate claimed. The court attached to its opinion a 16-page appendix in which it itemized each expenditure of counsel time for which compensation was sought, and identified which had been allowed and which had been reduced or stricken. This appeal followed. II. Title VII provides that "[i]n any action or proceeding under this subchapter the court, in its discretion, may allow the prevailing party, other than the Commission or the United States, a reasonable attorney's fee (including expert fees) as part of the costs . . . ." 42 U.S.C. 2000e-5(k). Accordingly, an award of fees under the statute is reviewed primarily under an abuse of discretion standard, and the trial court's range of discretion is particularly broad. United States v. Metropolitan Dist. Comm'n, 847 F.2d 12, 14 _____________ _________________________ (1st Cir. 1988). We have advised parties on more than one occasion that "the battle [over attorneys' fee awards] is likely to be determined in the trial court." E.g., Foley v. ___ _____ City of Lowell, 948 F.2d 10, 19 (1st Cir. 1991). Moreover, ______________ -4- -4- "the fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." Hensley v. Eckerhart, 461 U.S. _______ _________ 424, 437 (1983). In Hensley, the Supreme Court explained that "[t]he most _______ useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate," 461 U.S. at 433, adding that adjustments could then be made to reflect "other considerations" including the results obtained. Id. at 434. In this case, the district court __ determined compensable hours as follows: it discounted hours such as trial time to exclude time needed only because of the presence of the state claim; it disallowed hours spent on specific matters that by their nature could relate only to the state-law claim; and it disallowed hours documented so generally that the court could not determine their connection to the Title VII claim.3 Having derived a total number of allowable hours, the court then multiplied them by an hourly fee, reducing plaintiffs' requested hourly rate from $150 to $90 per hour. Plaintiffs' broadest challenge on this appeal is to the concept of separating time devoted to the federal and state- ____________________ 3The court also disallowed as improbable claims for hours in excess of 12 hours by an attorney on any one day. There is no separate challenge to this determination. -5- -5- law claims. Plaintiffs appear to recognize that, considered separately, time spent on the state-law claims would not warrant attorney's fees, those claims being outside the ambit of Title VII and unsuccessful to boot. Plaintiffs argue, however, that because their Title VII and state-law claims arose out of the same set of facts, virtually all of counsel's efforts to prepare this case for trial related to both the state-law and the federal claims. In these circumstances, plaintiffs contend, the courts have rejected attempts to attribute the hours spent in the preparation of the case to one claim or the other, and instead have viewed the litigation as a whole in setting an appropriate fee award. It is quite true that in Hensley the Supreme Court _______ cautioned that attempts to allocate hours between claims may be unwarranted where an action involves related legal theories applied to a common core of facts. 461 U.S. at 434- 35. Thus a district court may find that the federal and state claims are so interrelated, and the time spent in preparation of those claims so overlapping, that an attempt to separate the time attributable to one or the other would be futile. See, e.g., Munson v. Milwaukee Bd School Dirs., ___ ___ ______ _________________________ 969 F.2d 266, 272 (7th Cir. 1992); Wagenmann v. Adams, 829 _________ _____ F.2d 196, 225 (1st Cir. 1987). But it does not follow that the district court is prevented from eliminating hours _________ -6- -6- attributable to state-law claims where, as here, the court reasonably concludes that there is not a complete overlap and separation is proper. Indeed, in Hensley itself, where the _______ successful and unsuccessful claims were closely related, the Supreme Court said generally that "[t]he district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success." 461 U.S. at 436-37. In this instance there were, as the district court found, discrete tasks performed by plaintiffs' counsel that related only to the state-law claim for intentional infliction of emotional distress: for example, the development of evidence regarding the emotional harm allegedly suffered by Showalter and Phetosomphone (because compensatory damages were not then available under Title VII), and efforts relating to the jury, such as jury selection and preparation of instructions (because only the state-law claim was tried to the jury). On the same principle, we believe that the court was entitled to eliminate or discount hours or other expenses that it found would not have been incurred but for the unsuccessful state- law claim. See Hensley, 461 U.S. at 436-37; Wagenmann, 829 ___ _______ _________ F.2d at 225 (segregable expenses). Plaintiffs next criticize the district court's application of this concept, arguing (often in fairly general -7- -7- terms but with some examples) that some of the time discounted or disallowed should have been permitted. For example, plaintiffs say that time spent on state administrative proceedings, which are a predicate to filing a Title VII claim, should have been allowed, and that too little time was permitted for consulting with clients. Admittedly, in excluding or limiting these hours, the district court took a very hard line. The disallowances, however, were not irrational: they stemmed from the district court's decision that in these and similar instances, counsel provided inadequate explanation of the nature of the services for which compensation was claimed, or of their relationship to the Title VII claims, or both. Thus, where the time records contained entries such as "library" and "letters to opposing counsel," the court excluded the time, noting that the entries "left the court guessing about their purposes." There was some basis for the district court's insistence upon specificity. The court, which was intimately familiar with the case, found that plaintiffs' state-law claim played a very substantial role in plaintiffs' preparation and prosecution of this action. The court expressly rejected the representation of plaintiff's counsel that efforts relating exclusively to the state-law claim comprised less than five percent of her total work on the case, "[s]ince it [was] readily apparent to the Court that most of the plaintiffs' -8- -8- efforts were directed toward obtaining a large damage award under state law . . . ." Compensatory damages, of course, were not available under Title VII at the time of this trial. Compare Civil Rights Act of 1991, Pub. L. No. 102-166, 102, _______ 105 Stat. 1071, 1072-73 (1991). The district court's skepticism was also grounded in its finding that counsel had failed to submit contemporaneous time records showing hours worked. This omission persisted even after the court afforded counsel an opportunity to remedy the problem.4 We have expressly advised the bar that "the absence of detailed contemporaneous time records, except in extraordinary circumstances, will call for a substantial reduction in any award or, in egregious cases, disallowance." Grendel's Den, Inc. v. Larkin, 749 F.2d 945, 952 (1st Cir. ___________________ ______ 1984); accord, Hensley, 461 U.S. at 433 ("Where the ______ _______ documentation of hours is inadequate, the district court may reduce the award accordingly."). In this case, the court did not disallow trial counsel's claim for lack of such records, ____________________ 4Counsel first submitted a computer-generated list containing the dates that counsel had worked on plaintiffs' case, a brief description of the tasks performed and the number of hours expended. The court found this accounting inadequate and requested counsel to submit contemporaneous records. In response, counsel submitted individual time sheets for the entries on the chronological list. The court found that all of these time sheets were written by the same hand in the same pen, and it concluded that the sheets had not been prepared contemporaneously. This factual finding is not clearly erroneous and we are bound to accept it. -9- -9- but that lack did encourage the court to resolve doubts against reimbursement.5 We also reject the claim that the district court abused its discretion in reducing counsel's hourly rate from $150 to $90. We have held that a district court, in fixing a reasonable fee award, is not bound by the hourly rate requested by the victor's counsel; rather, the court may establish a rate that it considers reasonable based on counsel's skill and experience and prevailing market rates. See Metropolitan District Comm'n, 847 F.2d at 19; Wojtkowski ___ ____________________________ __________ v. Cade, 725 F.2d 127, 131 (1st Cir. 1984). The district ____ court noted that plaintiffs' counsel had been practicing law for only three years, and it stated that $75 to $90 per hour was the court's normal range for attorneys with this level of experience. The court awarded counsel the high end of the range to reflect her supervisory role in the litigation. Plaintiffs have provided us with no basis for overturning the court's judgment. Only one aspect of the district court's determination gives us pause. At the outset of its opinion, the court said ____________________ 5The lack of contemporaneous records did lead to one specific disallowance, but not of time claimed by lead counsel. Plaintiffs included in their submission the affidavit and bill of a predecessor attorney, which listed only a description of services and a total amount due. Neither the time expended in total nor on individual items was included. We see no error whatever in disallowing such an undocumented claim. -10- -10- that the relief obtained by plaintiff on the Title VII claim was "relatively limited in comparison to the scope of the litigation as a whole." Specifically, the court observed that each plaintiff's complaint had sought $1 million in compensatory damages on their unsuccessful state-law claim, whereas plaintiffs ultimately received only $1 in nominal damages (in the case of appellant Showalter) and $1,737 in back pay (in the case of Phetosomphone). Thus, the court noted, "[t]he combined monetary relief that the plaintiffs ultimately received was less than one-tenth of one percent of what they originally sought." We think that plaintiffs' proportionate success on the Title VII claim vis-a-vis their failure to prevail on the state-law claim is irrelevant. Since the district court eliminated from the award any compensation for hours spent on the prosecution of the state-law claim, it would be illogical to reduce further the award to reflect the lack of success of that claim. It is true that in a number of cases, the courts have stated that "the extent of a plaintiff's success is a crucial factor in determining the proper amount of an award of attorney's fees . . . ." Hensley, 461 U.S. at 440; see _______ ___ also Foley, 948 F.2d at 19. But we think these statements ____ _____ must be understood as referring to the degree of overall success where unsuccessful claims are included in the ________ -11- -11- calculation of the number of hours for which compensation is allowed. Nevertheless, we do not believe that the district court's comparison of the outcomes achieved by plaintiffs in their federal and state-law claims requires further proceedings. The district court expressed this view in an introductory section of its opinion; the belief did not manifest itself in any particular reduction in the fee award, and the specific reductions in the award were based upon the legitimate disallowance of hours. If the comment played any role, it was as a general predicate to the court's permissible decision to disallow or discount hours not shown to be related to the successful claim. III. Finally, plaintiffs contend that the court erred by disallowing its request for costs other than $240 in filing fees. This argument need not detain us long. The award of costs to the prevailing party, like the fee award, is a creature of statute. Fed. R. Civ. P. 54(d) states that "costs shall be allowed as a matter of course to the prevailing party unless the Court otherwise directs . . . ."6 Allowable costs are listed in 28 U.S.C 1920; and 28 ____________________ 6Although appellants' brief suggests that costs may be imposed directly under section 2000e-5(k), "[s]ection 2000e- 5(k) does not alter the standard by which the court awards costs that are not attorneys' fees pursuant to Rule 54(d)." Myrick v. TNT Overland Express, 143 F.R.D. 126, 128 (N.D. ______ _____________________ -12- -12- U.S.C. 1924 provides that "the party claiming any item of cost or disbursement shall attach thereto an affidavit, made by himself or his duly authorized attorney or agent having knowledge of the facts, that such item is correct and has been necessarily incurred in the case and that the services for which fees have been charged were actually and necessarily performed." A "bill of costs" form (AO 133) is made available to the prevailing party by the court; in addition to providing a worksheet to itemize costs, the form also provides a built-in declaration tracking the language of the statute. In this case, plaintiffs neglected to file a bill of costs form or to supply any other verification that the costs claimed were "necessarily incurred in the case" and that the services for which compensation was sought were "actually and necessarily performed." Rather, the affidavit submitted by plaintiffs stated only that the costs were expended "in the preparation and litigation of this case," which, as the district court noted, is a broader and more inclusive standard. The court therefore disallowed all costs other than $240, which represented the filing fees in the two cases; these were the only costs which, in the court's view, ____________________ Ohio 1992); accord, Goostree v. Tennessee, 796 F.2d 854, 864 ______ ________ _________ (6th Cir. 1986), cert. denied, 480 U.S. 918 (1987). ____________ -13- -13- could safely be assumed on their face to have been "necessarily incurred." The district court could permissibly have concluded that certain other expenses, such as the cost of the depositions of the individual defendants and the cost of an interpreter for plaintiff Phetosomphone, were "necessary" on their face, but we do not believe that the court was obliged to do so. At the fee hearing, the district judge warned plaintiffs' counsel that the initial costs submission was not a proper bill of costs and afforded additional time for filing, but the response was the affidavit already described. Preparing a technically adequate application for costs was plaintiffs' responsibility, not the court's; and it was not a difficult or onerous responsibility, given the "bill of costs" form available from the clerk. * * * Congress has provided for attorneys' fee awards in Title VII cases. It is important that the public policy reflected in the statute not be undone by requirements of proof that are overly stringent or by too grudging a test of what is reasonable. At the same time, such fee awards are peculiarly within the expertise and discretion of the district judge. It is often difficult to strike the proper note in fee-setting matters, to balance the need adequately to compensate successful counsel against the need to burden unsuccessful defendants fairly, but no more. The district court--which, as in this case, has frequently lived with the litigation and the -14- -14- lawyers for long period of time, and which is likely to be more familiar with the marketplace-- has the best coign of vantage. Metropolitan Dist. Comm'n, 847 F.2d at 20. Here the trial __________________________ judge provided an unusually detailed explanation for the reduction in the fees and costs sought by plaintiffs. The court's conclusions are untainted by legal error and fall within the realm of reasonableness. Accordingly, the district court's judgment is affirmed. ________ -15- -15- ALDRICH, Senior Circuit Judge, dissenting. I quite ____________________ agree with much of the court's opinion. Certainly an attorney fees determination should not be a second lawsuit, and a court's finding of the number of hours reasonably spent, and of appropriate hourly rates in part based on first hand appraisal of counsel's ability, should not be reviewable except for special reason. Nor can I sympathize with plaintiffs' unexplained and persistent disregard of formal methodology rules. I am much troubled, however, by the district court's approach to a primary issue in the case, the time devoted to the state claim that would not have been spent had that issue not been included. The federal and state cases were not separate, but were totally related, even with, as defendant concedes, identical witnesses. The only difference was that federal recovery, at that time, did not include compensatory damages. Even here there was a special connection in that plaintiffs were obliged to show, even for the federal count, that their own, conceded participation, was unenjoyable and involuntary. In this circumstance, total disregard of hours charged for such items as conferences with clients; contacts with counsel for defendants, and preparation for, and taking of the deposition of defendant Smith, the principal harasser, on the ground that counsel -15- -15- cannot allocate and subtract, imposes an extraordinary burden. As my brothers say, this might be an appropriate occasion to adopt the suggestion in Hensley v. Eckerhart, 461 _______ _________ U.S. 424, 436-37 (1983), where the Court said, "The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success." That, however, brings me to my real difficulty, the district court's finding that this was a case where the relief obtained was "truly limited in comparison to the scope of the litigation as a whole," citing Hensley, 461 _______ U.S. at 440. In terms, counsel "won on one minor claim for each plaintiff." In Riverside v. Rivera, 477 U.S. 561, 574-576 _________ ______ (1986), the Court said, Unlike most private tort litigants, a civil rights plaintiff seeks to vindicate important civil and constitutional rights that cannot be valued solely in monetary terms. . . . Because damages awards do not reflect fully the public benefit advanced by civil rights litigation, Congress did not intend for fees in civil rights cases, unlike most private law cases, to depend on obtaining substantial monetary relief. . . . Thus, Congress recognized that reasonable attorney's fees under 1988 are not conditioned upon and need not be proportionate to an award of money damages. -16- -16- Plaintiffs had achieved the maximum possible recovery on the federal claims, including an order against defendant employer to improve its internal procedures with respect to sexual harassment. By its dwelling at length on the state dollars sought and, though not applying them mathematically, concluding the federal claim "minor" I cannot but think that the district court greatly depreciated the Civil Rights Act, seriously impairing its discretion. I would favor reconsideration. -17- -17-