Julia M. O'ROURKE, Plaintiff,

v.

CITY OF PROVIDENCE; R. Michael Dimascolo; Manuel Costa; Alfred Bertoncini; and David Cionfolo, Defendants.

No. Civ.A. 95–343–L.

United States District Court,
D. Rhode Island.

Dec. 7, 1999.

Gerald C. DeMaria, Higgins, Cavanagh & Cooney, Providence, RI, Patricia E. Andrews, Providence, RI, for plaintiff.

Kevin F. McHugh, City of Providence Law Department, Providence, RI, Edward C. Roy, Jr., Roy & Cook, Providence, RI, for defendants.

## DECISION AND ORDER

LAGUEUX, Chief Judge.

This matter is before the Court on plaintiff's motion for attorneys' fees and costs pursuant to 42 U.S.C. § 2000e–5(k). Plaintiff requests $221,285 in attorneys' fees and $26,696.18 in costs for the two trials held in this case. Defendant objects on various grounds to portions of the motion and, thus, requests a reduction in the award of fees and costs.

This matter was initially referred to Magistrate Judge Robert W. Lovegreen pursuant to 28 U.S.C. § 636(b)(1)(B). On April 12, 1999, Judge Lovegreen issued a Report and Recommendation, concluding that an award of $90,790 in attorneys' fees and $16,231.30 in costs should be ordered. Both parties have filed timely objections to the Report and Recommendation. *See* 28 U.S.C. § 636(b)(1)(C) (1994). After a *de novo* review, this Court awards $99,685 in attorneys' fees and $10,214.50 in costs.

### I. *Background*

Plaintiff Julia M. O'Rourke became a firefighter with the City of Providence in 1992 and, on June 30, 1995, filed a complaint in this Court seeking damages for a variety of claims involving sexual discrimination. Initially, she was represented by an attorney who was subsequently suspended from the practice of law in the state and federal courts in Rhode Island. In September 1996, Attorney Patricia E. Andrews entered her appearance for plaintiff. Her first task was to amend the overly verbose and much-muddled complaint. The Amended Complaint filed by Attorney Andrews contained five counts against the City of Providence and six individual defendants—Counts I and II alleged a hostile work environment and sought damages pursuant to 42 U.S.C. § 2000e (Title VII) and R.I.Gen.Laws § 28–5–24.1 (Rhode Island Fair Employment Practices Act); Counts III and IV alleged disparate treatment and sought damages under the same two statutes; and Count V alleged a violation of plaintiff's equal protection rights and sought damages pursuant to 42 U.S.C. § 1983. The alleged discrimination occurred while plaintiff was assigned to Engine 13. Attorney Andrews then proceeded to complete discovery, which involved taking many depositions.

Just prior to the jury impanelment date of June 10, 1997, Attorney Andrews determined that the issues in the case were complex and she believed she needed assistance from someone with more trial experience than she had. Consequently, she obtained the services of Attorney Gerald C. DeMaria to try the case. Two individual defendants were dropped from the case before a jury was impaneled on June 10, 1997. Trial commenced on July 14, 1997. Prior to trial, defendants (the City of Providence and the four individuals remaining in the case) moved in limine to exclude any evidence of alleged sexual harassment or discrimination occurring before September 13, 1994, which was 300 days prior to plaintiff's filing of the discrimination charge at the Rhode Island Human Rights Commission on July 10, 1995, because such evidence would cover a period beyond the federal statute of limitations and would be highly prejudicial in violation of Federal Rule of Evidence 403. Plaintiff's counsel (Andrews) argued that the evidence was admissible because it would establish a

"continuing violation" and, thus, should be excepted from the statute of limitations and beyond the reach of Rule 403 because of its relevance. It was also asserted that the evidence was relevant to plaintiff's § 1983 claim against the City and the individual defendants, which cause of action has a three-year statute of limitations. Based on those representations, this Court denied the motion in limine on the statute of limitations grounds and reserved decision on the Rule 403 issue. Thus, during plaintiff's direct case at trial, the jury heard evidence about events that occurred commencing with her entrance into the Firefighters' Training Academy in March 1992. This evidence concerned specific incidents that occurred during the period plaintiff was attending the Training Academy, during the period she was assigned to Fire Chief Bertoncini's office and during the period she was assigned to Engine 5, including occurrences at the Wayland Manor fire, which was a main feature of plaintiff's case. She produced much evidence to rationalize her conduct at that fire (leaving her post without permission and not promptly returning) and the resulting criticism from her superiors which resulted in her transfer to Engine 13. She attributed all this to sex discrimination.

The trial lasted 15 trial days. At the close of plaintiff's case, all defendants moved for judgment as a matter of law pursuant to Fed.R.Civ.P. 50. This Court granted the motion as to the individual defendants on all Counts and as to the City on Counts III, IV and V. Thus, only Counts I and II against the City remained and those Counts only implicated the events that occurred at Engine 13 after her transfer. Prior to the start of the City's case, this Court ordered that any evidence regarding events occurring prior to September 1994 not related to plaintiff's tenure at Engine 13 be stricken and instructed the jury to disregard said evidence because it was irrelevant and prejudicial. The defense attempted but was not permitted to rebut that stricken evidence.

The jury subsequently awarded plaintiff $275,000 in damages on Counts I and II.

Defendant City then made a motion for a new trial. This Court granted that motion because of the erroneous admission of the irrelevant and highly prejudicial evidence. This Court stated: "So looking back at this matter with 20/20 hindsight, I should have granted the Motion in Limine, and I should have restricted the testimony in this trial very substantially. Plaintiff's lawyers led me into grievous error by arguing that that evidence was admissible." Tr., October 28, 1997, at 22–23. The Court also concluded that its cautionary instruction to the jury was ineffective judging by the size of the verdict. In short, the Court concluded that fairness dictated that the City be granted a new trial.

The second trial commenced in April 1998 and was much shorter than the first trial because all the prejudicial ancient history was excluded. It concluded with a jury award of $200,000 to plaintiff against the City. Although the verdict was on the high side, the Court allowed it to stand because the second trial was uncontaminated by tainted evidence.

Plaintiff now seeks attorneys' fees and costs for both trials. This Court referred the matter to Magistrate Judge Lovegreen, who recommended an award of $90,790 in attorneys' fees and $16,231.30 in costs. The main reason for the discrepancy between plaintiff's request and this recommendation is Judge Lovegreen's conclusion that plaintiff should not be compensated for time spent by her attorneys on the first trial. Plaintiff has objected to this conclusion and others, while defendant City has objected on various grounds to other parts of the Magistrate Judge's Report and Recommendation.

After a thorough *de novo* review, this Court concludes that Judge Lovegreen's analysis, particularly his summary of the applicable law, is comprehensive and generally sound. Therefore, this Court draws heavily upon the Report and Recommendation in rendering this opinion. This

Court writes only to further explicate its reasoning for denying counsel fees for the first trial, to outline its approach to allowing fees for two attorneys at the second trial and to clarify the allowance or disallowance of some fee and cost requests about which it disagrees in minor degree with the Magistrate Judge.

## II. *Legal Standards*

### A. Standard of Review

■ A district court may refer a motion for attorneys' fees to a magistrate judge for disposition. *See* Fed.R.Civ.P. 54(d)(2)(D). If a timely objection is filed to the magistrate judge's determination, the district court reviews the matter *de novo* because the Federal Rules of Civil Procedure require that the motion for attorneys' fees be treated "under Rule 72(b) as if it were a dispositive pretrial matter." *Id. See also* Fed.R.Civ.P. 72(b); *R.A. v. Department of Children, Youth and Families,* 18 F.Supp.2d 157, 159 (D.R.I.1998).

■ In making a *de novo* determination, the district court "may accept, reject, or modify the recommended decision, receive further evidence, or recommit the matter to the magistrate judge with instructions." Fed.R.Civ.P. 72(b). *See also* 28 U.S.C. § 636(b)(1)(C) (1994). In reviewing a magistrate judge's recommendations, the district court must actually review and weigh the evidence presented to the magistrate judge, and not merely rely on the magistrate judge's report and recommendation. *See U.S. v. Raddatz,* 447 U.S. 667, 675, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980); *Gioiosa v. U.S.,* 684 F.2d 176, 178 (1st Cir.1982).

### B. The Award of Attorneys' Fees

Plaintiff brought Count I of her suit pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. 42 U.S.C. § 2000e–5(k) provides that "[i]n any action or proceeding under this subchapter the court, in its discretion, may allow the prevailing party, other than the Commission or the United States, a reasonable attorney's fee (including expert fees) as part of the costs[.]" 42 U.S.C. § 2000e–5(k) (1994).

■ To recover attorneys' fees under this provision, a plaintiff must be a "prevailing party." *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983).[1] " '[P]laintiffs may be considered 'prevailing parties' for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit.' " *Id.* (quoting *Nadeau v. Helgemoe,* 581 F.2d 275, 278–279 (1st Cir.1978)). In other words, a plaintiff "need not achieve total victory in order to be deemed a 'prevailing' party." *Pontarelli v. Stone,* 781 F.Supp. 114, 119 (D.R.I.1992), *appeal dismissed,* 978 F.2d 773 (1st Cir.1992).

■■ Ordinarily, a prevailing plaintiff should recover an attorney's fee unless special circumstances would render such an award unjust. *See Hensley,* 461 U.S. at 429, 103 S.Ct. 1933. *See also Donnelly v. R.I. Bd. of Governors for Higher Educ.,* 946 F.Supp. 147, 150 (D.R.I.1996) (applying the same standard to a request for a fee award under Title VII). However, the determination of a "reasonable" fee amount is within the "extremely broad" discretion of the district court. *See Lipsett v. Blanco,* 975 F.2d 934, 937 (1st Cir. 1992).

1. *Hensley,* which the First Circuit has described as "the seminal case on awarding attorney's fees," *Andrade v. Jamestown Housing Auth.,* 82 F.3d 1179, 1191 (1st Cir.1996), concerned plaintiff's request for attorneys' fees made pursuant to 42 U.S.C. § 1988. However, the *Hensley* Court noted that the fee award provision in § 1988 was "patterned upon" the fee provisions in Titles II and VII of the Civil Rights Act and stated that "[t]he standards set forth in this opinion are generally applicable in all cases in which Congress has authorized an award of fees to a 'prevailing party.' " *Hensley,* 461 U.S. at 433 n. 7, 103 S.Ct. 1933 (citing *Hanrahan v. Hampton,* 446 U.S. 754, 758 n. 4, 100 S.Ct. 1987, 64 L.Ed.2d 670 (1980) (per curiam)). Thus, *Hensley* applies with full force to the case at bar.

"[T]he trial court's starting point in fee-shifting cases is to calculate a lodestar; that is, to determine the base amount of the fee to which the prevailing party is entitled by multiplying the number of hours productively expended by counsel times a reasonable hourly rate." *Id.* (citing *Hensley,* 461 U.S. at 433, 103 S.Ct. 1933). Courts typically calculate the "number of hours productively expended by counsel" by determining the amount of actual time counsel spent on the case and then subtracting any " 'hours which were duplicative, unproductive, excessive, or otherwise unnecessary.' " *Id.* (quoting *Grendel's Den, Inc. v. Larkin,* 749 F.2d 945, 950 (1st Cir.1984)). To determine a "reasonable hourly rate," courts must "tak[e] into account the 'prevailing rates in the community for comparably qualified attorneys.' " *Id.* (quoting *U.S. v. Metropolitan Dist. Comm'n,* 847 F.2d 12, 19 (1st Cir.1988)).

The party seeking attorneys' fees has the burden of submitting sufficient documentation and "evidence supporting the hours worked and rates claimed. Where the documentation of hours is inadequate, the district court may reduce the award accordingly." *Hensley,* 461 U.S. at 433, 103 S.Ct. 1933.

Finally, "[t]he product of reasonable hours times a reasonable rate does not end the inquiry." *Id.* at 434, 103 S.Ct. 1933. The district court may consider other circumstances in deciding whether to adjust the lodestar upward or downward, "including the important factor of the 'results obtained.' This factor is particularly crucial where a plaintiff is deemed 'prevailing' even though he succeeded on only some of his claims for relief." *Id.* (footnote omitted).

The *Hensley* Court directly addressed this situation and determined that the district court must answer two questions. "First, did the plaintiff fail to prevail on claims that were unrelated to the claims on which he succeeded?" *Id.* If so, "the hours spent on the unsuccessful claim should be excluded in considering the amount of a reasonable fee." *Id.* at 440, 103 S.Ct. 1933.

■ Second, if the plaintiff was unsuccessful on a related claim, such that the unsuccessful claim involved "a common core of facts or [was] based on [a] related legal theor[y]," *id.* at 435, 103 S.Ct. 1933, then the district court must ask whether the "plaintiff achieve[d] a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award[.]" *Id.* at 434, 103 S.Ct. 1933. A plaintiff who has won "substantial relief" should not have his attorney's fee reduced "simply because the district court did not adopt each contention raised. But where the plaintiff achieved only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained." *Id.* at 440, 103 S.Ct. 1933.

In making a reduction on this basis, "[t]he district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success." *Id.* at 436–437, 103 S.Ct. 1933. A district court must, however, "provide a concise but clear explanation of its reasons for the fee award." *Id.* at 437, 103 S.Ct. 1933.

### C. The Award of Costs

While 42 U.S.C. § 2000e–5(k) is the statutory basis for attorneys' fees, Federal Rule of Civil Procedure 54(d) provides the basis for the award of litigation costs. The rule provides that "costs ... shall be allowed as of course to the prevailing party unless the court otherwise directs[.]" Fed. R.Civ.P. 54(d). The expenses allowable as costs are enumerated in 28 U.S.C. § 1920. These include:

(1) Fees of the clerk and marshal;

(2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;

(3) Fees and disbursements for printing and witnesses;

(4) Fees for exemplification and copies of papers necessarily obtained for use in the case;

(5) Docket fees under section 1923 of this title;

(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920 (1994).

In addition, 28 U.S.C. § 1924 requires the party seeking costs to submit an affidavit attesting "that such item is correct and has been necessarily incurred in the case and that the services for which fees have been charged were actually and necessarily performed." 28 U.S.C. § 1924. Local Rule 25 requires "a memorandum of the costs and necessary disbursements, so specifying each item that the nature of each can be readily understood," D.R.I. Local R. 25(c)(1), and a "bill of costs" form (AO 133) is available to assist a prevailing party in documenting the request.

■ District courts have great discretion in awarding reimbursement of expenses in those cases where reimbursement is appropriate. *See In re Fidelity/Micron Sec. Litig.,* 167 F.3d 735, 736 (1st Cir.1999). *See also In re Thirteen Appeals Arising Out of San Juan Dupont Plaza Hotel Fire Litig.,* 56 F.3d 295, 309 (1st Cir.1995). Unverified expenses may be rejected out of hand. *See Fidelity,* 167 F.3d at 738. *See also Weinberger v. Great Northern Nekoosa Corp.,* 925 F.2d 518, 527 (1st Cir.1991).

■ The Court does have discretion to allow unverified costs where it is clear from the nature of the cost that it was necessarily incurred. *See Phetosomphone v. Allison Reed Group, Inc.,* 984 F.2d 4, 9 (1st Cir.1993).

---

**2.** The statute of limitations for § 1983 claims is borrowed from state personal injury law. *See Owens v. Okure,* 488 U.S. 235, 249–250, 109 S.Ct. 573, 102 L.Ed.2d 594 (1989). In

---

III. *Factors Utilized in Determining the Award of Attorneys' Fees*

**A. Fees for the First Trial**

■ Before turning to the detail-oriented task of determining the lodestar, this Court must first address what is clearly the primary issue in this phase of the case—whether plaintiff can recover attorneys' fees for the first trial when her counsel was responsible for the introduction of irrelevant and highly prejudicial evidence that resulted in a voiding of that trial result. The Court concludes that she cannot.

This Court first notes that it is not denying attorneys' fees *in toto* and, thus, there need not be "special circumstances" to justify the denial. *Cf. Hensley,* 461 U.S. at 429, 103 S.Ct. 1933; *Donnelly,* 946 F.Supp. at 150. It is within the sound discretion of this Court to set reasonable attorneys' fees. *See Blanco,* 975 F.2d at 937.

As noted above, this Court admitted evidence at the first trial of plaintiff's alleged sexual harassment that would ordinarily have been time-barred under Title VII. *See* 42 U.S.C. § 2000e–5(e) (1994). It did so because plaintiff's counsel argued in opposition to the motion in limine that the evidence was relevant and admissible both under the "continuing violation" theory, which is an equitable exception to Title VII's statute of limitations, *see Provencher v. CVS Pharmacy,* 145 F.3d 5, 14 (1st Cir.1998), and to prove the § 1983 claim, which has a three-year statute of limitations.[2] A continuing violation can occur "where a chain of similar discriminatory acts emanating from the same discriminatory animus exists and where there has been some violation within the statute of limitations period that anchors the earlier claims." *Provencher,* 145 F.3d at 14. The

Rhode Island, the applicable statute specifies a limitations period of three years. *See* R.I.Gen.Laws § 9–1–14(b) (1997).

timely acts must be linked to the untimely acts "by similarity, repetition or continuity." *Id.* at 15.

At the close of plaintiff's case, this Court dismissed the § 1983 claim, as well as the disparate treatment claims, and admonished the jury not to consider the time-barred testimony because the continuing violation theory was not applicable. The trial results were nullified because the evidence was highly prejudicial and this Court found its limiting instructions to be ineffective. Thus, it was and still is the view of this Court that plaintiff's counsel, by representing that the evidence was admissible, led this Court into the error that caused that nullification.

Plaintiff attempts to argue that the continuing violation theory did apply in the case. This Court will not conduct another review on the merits of the continuing violation argument. It has done so and has concluded that the theory is clearly inapplicable to the facts of this case.[3] The question then is whether plaintiff is nonetheless entitled to attorneys' fees for time spent on the doomed trial.

Magistrate Judge Lovegreen based his recommendation to deny fees for the first trial in part on *Gierlinger v. Gleason,* 160 F.3d 858 (2nd Cir.1998), which he cited as supporting the proposition that such a denial is appropriate when an attorney engages in misconduct leading to a mistrial. *See* Magistrate Judge Robert W. Lovegreen, Report and Recommendation dated April 12, 1999 ("R & R") at 8. In that Title VII case, the district court had denied plaintiff attorneys' fees for time spent on a trial that had resulted in a mistrial, concluding that plaintiff's counsel bore "significant responsibility" for the mistrial. *Gleason,* 160 F.3d at 878. The Second Circuit concluded that the denial was an abuse of discretion, as the record did not support that result. *Id.* The Court noted that the district court had expressly stated

that the conduct of plaintiff's counsel would not have justified declaring a mistrial and that at no point had the district court identified any misconduct by plaintiff's counsel. *See id.* at 879.

This Court stated at oral argument and reiterates here that it is not accusing plaintiff's counsel of outright misconduct. However, if *Gleason* is read broadly, it not only suggests that misconduct would warrant a reduction of fees, it indicates clearly that a reduction of fees would be appropriate where the plaintiff's attorney otherwise bears significant responsibility for lengthening the trial process. Here, the record supports such a conclusion.

In this case, plaintiff's counsel is at least guilty of bad judgment and lack of foresight. It should have been clear to plaintiff's attorney, Andrews, before the first trial that the firefighters accused of sexually harassing plaintiff at Engine 13 had no contact with her at prior work assignments. That became abundantly clear to this Court during the course of the first trial. Clearly most of the time-barred evidence, especially evidence relating to the Wayland Manor fire, was entirely unrelated to plaintiff's experience at Engine 13, such that a continuing violation claim could not reasonably be asserted. Moreover, the evidence was very highly prejudicial. Plaintiff's counsel should have been more diligent in the evaluation of the evidence and concluded that its prejudicial nature dictated that it not be used before representing to this Court that it was appropriate for the jury to hear. This Court, recognizing that *Gleason* is not controlling but borrowing its reasoning, concludes that the appropriate result here is to reduce the fee award because, although there is no finding of misconduct, plaintiff's counsel nonetheless bears significant responsibility for lengthening the litigation process. A reasonable attorney's fee need

---

**3.** There is one exception. This Court has held that evidence starting with plaintiff's arrival at Engine 13 is not time-barred, although it

extends back to May, 1994, because the continuing violation theory is applicable to harassment occurring at that work station.

not include reimbursement for time spent as a result of bad lawyering.

Plaintiff argues that she should at least be compensated for time spent on the Engine 13 evidence during the first trial, as that was clearly relevant and admissible. However, this Court will not undertake the labyrinthine task of itemizing trial and discovery hours. Recognizing that not all of the time spent on the first trial was wasted, this Court will instead disallow only time actually spent while the trial was occurring, including time spent during jury impanelment. Any time spent preparing for the first trial, if not excludable for another reason, will be allowed because it was useful for conduct of the second trial.

This Court notes that fees for the first trial can be denied on an alternative theory. Counts III–V were dismissed at the conclusion of plaintiff's case and the four individual defendants were granted judgment as a matter of law. In addition, this Court rejected the continuing violation theory. Under *Hensley*, 461 U.S. at 440, 103 S.Ct. 1933, if those claims are "distinct" from the claim on which plaintiff prevailed, it is appropriate to reduce the fee award. Although often in discrimination cases claims are based on "a common core of facts" or "related legal theories," *id.* at 435, 103 S.Ct. 1933, that is not true here. As is evidenced by the order of events in this case, plaintiff's continuing violation theory was not based on a common core of facts—all of the evidence at issue represents separate facts from those needed to establish plaintiff's claim of a hostile work environment at Engine 13. In addition, her claims against the individual defendants were way off that mark. Furthermore, plaintiff's claims of disparate treatment and her § 1983 claim require a showing of discriminatory intent, *see Lipsett v. University of Puerto Rico*, 864 F.2d 881, 896 (1st Cir.1988), unlike her hostile environment claim. *See id.* at 897–898. Much of the controversial evidence in this case was directed at proving this element, which was eventually found to be lacking.

Finally, the § 1983 claim involved facts unconnected with the Title VII claims due to the differing statutes of limitations and the involvement of different personnel. To the extent work on the three dismissed claims and the continuing violation theory was unrelated to work on the winning hostile environment claim, it is appropriate to reduce the fee award by hours spent developing and presenting those claims. Since, as noted above, such itemizing would be extremely tedious, reducing the award by actual time spent at the first trial by plaintiff's attorneys is appropriate. Indeed, plaintiff is fortunate that the prevailing individual defendants have not made a claim for attorneys' fees against her.

The first trial commenced on July 21, 1997 and concluded on August 13, 1997. By this Court's calculations, Attorney DeMaria spent 210.3 hours performing jury impanelment, trial preparation, trial and post-trial work during that period. Attorney Andrews spent 190.5 hours. These hours will be deducted from the total hours claimed by each attorney.

## B. Inadequate Documentation

 Magistrate Judge Lovegreen disallowed 17.5 hours claimed by Attorney DeMaria because the tasks were inadequately described. 1.5 of those hours were described as a "conference" and the remaining 16 were described as "further trial preparation." This Court agrees that these descriptions are not specific enough to meet the First Circuit's stringent requirements concerning the documentation necessary to support a fee petition. The documentation must be "a 'full and *specific* accounting' of the tasks performed, the dates of the performance, and the number of hours spent on each task." *Weinberger*, 925 F.2d at 527 (emphasis added) (quoting *Calhoun v. Acme Cleveland Corp.*, 801 F.2d 558, 560 (1st Cir.1986)). Since these descriptions did not specifically describe the tasks performed, this Court will disallow them. To be consistent, this Court will disallow an additional half hour that

was similarly described by Attorney De-Maria only as a "conference."

In all other respects, Magistrate Judge Lovegreen found the fee documentation adequate and this Court agrees.

## C. Reasonable Hours Expended

Having trimmed some of the fat from the requested hours, this Court will now calculate the lodestar by subtracting from the remaining actual hours any hours that the Court finds "duplicative, unproductive, excessive, or otherwise unnecessary." *Blanco,* 975 F.2d at 937.

 In this regard, defendant objects to the use of two attorneys at trial and urges this Court to find any trial or trial preparation hours claimed by Attorney Andrews duplicative. While it is true that "[a]s a general matter, 'the time for two or three lawyers in a courtroom or conference, when one would do," may be disallowed, *id.* at 938 (quoting *Hart v. Bourque,* 798 F.2d 519, 523 (1st Cir.1986)), "a litigant's staffing needs often vary in direct proportion to the ferocity of her adversaries' handling of the case[.]" *Id.* at 939. The *Blanco* Court, noting that "staffing issues are often best resolved by the trial court's application of its intimate, first-hand knowledge of a particular case's nuances and idiosyncracies[,]" found no abuse of discretion in the trial court's finding that plaintiff's use of multiple attorneys and a paralegal at trial was reasonable, where the case was complex and the defendants' counsel were formidable. *Id.; accord Johnson v. University College of the Univ. of Ala.,* 706 F.2d 1205, 1208 (11th Cir.1983), *cert. denied,* 464 U.S. 994, 104 S.Ct. 489, 78 L.Ed.2d 684 (1983) ("The retaining of multiple attorneys in a significant, lengthy employment discrimination case ... is understandable and not a ground for reducing the hours claimed.").

Applying these legal standards, Magistrate Judge Lovegreen found that plaintiff's use of two attorneys at trial was warranted, given the complexity of the liti-gation, the experience of the Assistant City Solicitor representing the City and the fact that Attorney DeMaria entered the matter at a late stage. However, after reaching this conclusion, Magistrate Judge Lovegreen, while allowing actual trial time, nonetheless disallowed as duplicative any hours claimed by Attorney Andrews that were spent on trial preparation or strategy development, reasoning that these tasks belonged solely to Attorney DeMaria.

This Court, given its experience with this particular case and cases like it, agrees with Magistrate Judge Lovegreen's analysis and his conclusion that the use of two attorneys at trial was reasonable. However, this Court will take a different approach to calculating the lodestar with regard to Attorney Andrews' hours. This Court has observed that in complex litigation such as this, plaintiffs often employ two attorneys who have different roles at trial. There is often an experienced trial attorney who questions the witnesses and argues to the jury and a less experienced attorney who has conducted research and some discovery and is there to provide assistance to the first attorney both at trial and during trial preparation. It is helpful to view these two roles as "partner" and "associate," although the labels might not always be literally correct.

In this case, Attorney Andrews framed the case by drafting the Amended Complaint and then conducting all of the discovery, including all of the depositions. She also handled settlement conferences. In completing these tasks, she drew upon her fairly extensive experience as a Title VII attorney and, thus, was operating at a "partner" level. At trial, Attorney Andrews acted as more of an "associate," as her role was to assist Attorney DeMaria, a very experienced trial attorney who did all of the witness questioning and arguments. Thus, while Attorney Andrews' time spent in trial preparation and strategy development, along with the hours she spent in trial, was not duplicative, it should nonetheless be compensated at a lower rate

that more appropriately reflects her role. Thus, this Court will allow all of Attorney Andrews trial preparation, strategy development and trial time, but at a lower hourly rate than the rate applied to the hours she spent framing the case and conducting discovery and depositions, as determined below. *See Blanco*, 975 F.2d at 940 (compensating attorney hours spent on clerical tasks at a lower rate to reflect the nature of the tasks).

Continuing with the lodestar calculation, Magistrate Judge Lovegreen disallowed 10 hours of Attorney Andrews' time and 33.5 hours of Attorney DeMaria's time as duplicative and/or unnecessary because the attorneys spent that time reviewing the case files to familiarize themselves with the case when each undertook representation. Although under some circumstances disallowance of time spent due to the transfer of a case is warranted, *see Hart*, 798 F.2d at 522–523 (disallowing time spent reviewing files where the multiple transfers were the result of an "office defect"), this Court disagrees with Magistrate Judge Lovegreen that those circumstances are present in this case. Attorney Andrews took over the case following the suspension of plaintiff's first attorney, a situation clearly not attributable to plaintiff or Andrews. Reasonable time for Andrews' getting up to speed should be allowed. Attorney DeMaria was brought into the case at a late stage, mainly for his experience in trying cases. This Court has already determined above that the use of a second attorney at trial was reasonable, thus reasonable time for DeMaria to familiarize himself with the case will similarly be allowed. The Court finds the hours claimed by the attorneys to be reasonable given the complexity of the case and includes these hours in calculation of the lodestar.

Magistrate Judge Lovegreen also disallowed 7.1 hours claimed by Attorney Andrews as excessive. Three of these hours were spent preparing the Amended Complaint and 4.1 were spent finalizing pretrial details. Magistrate Judge Lovegreen ap-parently felt that Attorney Andrews spent too much time on these tasks, but offered no further analysis. This Court disagrees. Both tasks involved detailed and extensive factual and legal analyses and there is no evidence that Andrews did not make an effort to complete them in a reasonable time. Thus, Andrews' actual hours will be allowed.

Finally, this Court agrees with two reductions made by Magistrate Judge Lovegreen. First, there will be no allowance of time spent with expert witness John Pryor because he did not testify at trial. Second, there will be no allowance of 6.5 hours claimed by Attorney DeMaria but actually performed by another attorney who was not included in the fee petition and for whom there was no hourly rate stated.

This Court finds no other duplicative, unproductive, excessive, or otherwise unnecessary hours in the requests made by counsel.

### D. Reasonable Hourly Rates

Magistrate Judge Lovegreen recommended that a reasonable hourly rate for Attorney DeMaria be set at $200. In arriving at this conclusion, Magistrate Judge Lovegreen outlined Attorney DeMaria's substantial list of credentials, which this Court will not repeat, and noted that Attorney DeMaria requested an hourly rate of $250 but submitted an affidavit stating that his hourly rate for complex civil litigation, especially Title VII litigation, "ranges between $200 to $250 per hour." There is no evidence in the record from either side as to the prevailing market rate in this community in like matters. However, Magistrate Judge Lovegreen noted correctly that "the court is entitled to rely upon its own knowledge of attorney's fees in its surrounding area in arriving at a reasonable hourly rate[.]" *Andrade*, 82 F.3d at 1190 (citing *Nydam v. Lennerton*, 948 F.2d 808, 812–813 (1st Cir. 1991)).

Magistrate Judge Lovegreen noted that DeMaria "is recognized as a well-established, highly-regarded trial attorney in the Rhode Island legal community. He has had substantial trial experience both in the federal and state courts for over twenty years. He has tried many and substantial civil matters, including civil rights matters, to verdict and is deserving of the high end of the appropriate range. In this matter, he entered his appearance just prior to trial, came up to speed quickly and conducted a successful, albeit flawed, first trial and a successful second trial." R & R at 14. Consequently, relying on "information learned at settlement conferences, other reports and recommendations issued by this Court as to awards of attorney fees, and decisions of other courts in attorney fee award cases[,]" *Id.* at 13, Magistrate Judge Lovegreen concluded that $200 per hour was a reasonable rate.

This Court fully agrees with Magistrate Judge Lovegreen's analysis and will not beat a dead horse. It addresses the issue further only to dispose of defendant's objection that an hourly rate of $200 is too high. Defendant relies upon *Andrade,* 82 F.3d at 1190, for the proposition that $200 per hour is unreasonable for civil rights litigation in the Providence, Rhode Island area. Putting aside that almost three years have passed since that case was decided, during which hourly rates may have increased, *Andrade* simply does not establish that $200 for civil rights litigation in this area is per se unreasonable. Instead, the First Circuit merely determined in that case that the district court did not abuse its discretion in adopting the magistrate judge's recommendation that an hourly rate of $200 was too high for the civil rights litigation before the court. *Id.* Thus, *Andrade* clearly does not restrict this Court's discretion to adopt an hourly rate of $200 on the specific facts of this case.

Attorney Andrews, as noted above, actually fulfilled two roles in this case, and as such should be paid two separate rates. Andrews is an experienced Title VII attorney, having limited her practice to labor and employment law since 1990, after entering private practice in 1987. In her affidavit, Attorney Andrews states that her normal hourly rate for civil rights actions is $175. Judge Lovegreen, based upon his experience, found that an appropriate range for civil rights litigation in this area is $125 – $200 per hour. He then concluded that $150 per hour was a more appropriate rate for Attorney Andrews given that she "is still a relatively young attorney[.]" R & R at 13. This Court agrees with that conclusion and further agrees that this rate "approaches the mid-point of the appropriate range in this market and reflects the risk assumed by Andrews in taking this matter initially and bringing it to the trial stage." *Id.* at 14. Therefore, a rate of $150 an hour will be applied to the time Andrews spent in her "partner" role.

As for her trial and trial preparation time, however, Andrews should be compensated at the prevailing rate of a less experienced "associate." As the attorneys could not have anticipated the approach of the Court in resolving this matter, no documentation concerning the prevailing rate for an associate is in the record. However, based on its experience, this Court finds that an hourly rate of $100 is appropriate for Andrews' trial and trial preparation time.

## IV. *Calculation of the Fees*

Based on the legal assumptions discussed above, this Court will now calculate the fee award for each attorney.

Attorney Andrews claimed a total of 535.2 hours.[4] Subtracting the 190.5 hours spent on the first trial, 344.7 hours remain. Further subtracting the 7.2 hours Andrews spent with expert John Pryor, 337.5

---

4. The petition actually claims 527.2 hours on its face. However, a review of the itemized descriptions yields a total of 535.2, or more

specifically, 443.2 hours for the first trial and 92 hours for the second.

hours remain. This Court has reviewed the detailed task descriptions and determined that 92 of those hours were spent in Andrews' "associate" role, while 245.5 hours were spent in her "partner" role.[5] Multiplying those numbers by the applicable rates of $100.00 and $150.00, the fees total $9,200.00 and $36,825 respectively. The total fee award for Andrews is thus $46,025.

Attorney DeMaria claimed a total of 516.1 hours. Subtracting the 210.3 hours spent on the first trial, 305.8 hours remain. Further subtracting the 18 hours disallowed due to inadequate documentation, 287.8 hours remain. Further subtracting the 13 hours DeMaria spent with expert John Pryor, 274.8 hours remain. Finally, subtracting the 6.5 hours claimed by DeMaria but performed by another attorney, 268.3 hours remain. Multiplying that number by the applicable rate of $200.00, the total fee award for DeMaria is $53,660.00.

Therefore, the total fee award is $99,685.

## V. Costs

Plaintiff seeks reimbursement for the costs of: 1) deposition transcripts in the amount of $9,754.68, 2) the services of John B. Pryor, Ph.D., a proposed expert witness for plaintiff who did not testify at either trial, in the amount of $6,000 and 3) the services of Warren Purvis, M.D., an expert witness who did testify at trial for plaintiff, in the amount of $2,000. In addition, plaintiff seeks reimbursement for costs incurred by her attorneys. Attorney Andrews claims $500 for a retainer for Dr. Pryor. Attorney DeMaria claims constable fees of $810 for the first trial and $577.50 for the second trial and $7,054 for the full transcript and preliminary excerpts of the first trial.

Plaintiff has failed to file a bill of costs supporting her claims. Nevertheless, this Court will deal with each request in turn because the documentation is adequate.

■ Plaintiff seeks reimbursement for the following depositions: Dr. Pryor, Manuel Costa, Michael DiMascolo, John Hannon, George Farrell, Keith Gonsalves, Edward McDonald, Robert McCollough, Richard Hiter, Hope Varone, Frank Silva, Michael Morgan, Roger Richards, David Cionfolo, Cynthia Loiselle, Alfred Bertoncini, Andre Ferro, William Moise, Joseph Marino, Lisa Kraft, Heidi Rivard, James Nunes, Julia O'Rouke and Anthony Cacicia. The First Circuit has set out a clear rule regarding the reimbursement of deposition costs under 28 U.S.C. § 1920(2):

> [I]f depositions are either introduced in evidence or used at trial, their costs should be taxable to the losing party. It is within the discretion of the district court to tax deposition costs if special circumstances warrant it, even though the depositions were not put in evidence or used at the trial.

*Templeman v. Chris Craft Corp.*, 770 F.2d 245, 249 (1st Cir.1985), *cert. denied*, 474 U.S. 1021, 106 S.Ct. 571, 88 L.Ed.2d 556 (1985).

Only four of the deposition transcripts claimed, those of defense witnesses Bertoncini, Gonsalves, Nunes and Richards, were used at the second trial by plaintiff's lawyer. The total cost of these transcripts is $1,773. This cost will be assessed against defendant City under the first part of the rule.

Applying the second part of the rule, no special circumstances exist that warrant the inclusion of additional deposition costs in the award. The mere fact that plaintiff "may have found the transcripts convenient or helpful is insufficient to warrant including the transcript fees as an element of costs." *Donnelly*, 946 F.Supp. at 152.

■ Turning to the request for reimbursement for services of the two expert

---

**5.** This division is based on the Court's finding that all 92 hours Andrews spent on the second trial were in her "associate" role, while all allowed hours spent on preparation for trial were in her "partner" role.

witnesses, this Court must first clarify the applicable law. 28 U.S.C. § 1821 provides for the per diem, travel and subsistence expenses for witnesses to be reimbursed pursuant to 28 U.S.C. § 1920(3). *See* 28 U.S.C. § 1821 (1994). It is a long-standing rule that courts cannot award costs for expert witnesses in excess of § 1821 except in limited circumstances, one of which is the presence of explicit statutory authority to do so. *See International Woodworkers of Am., AFL—CIO v. Champion Int'l Corp.*, 790 F.2d 1174, 1178–1180 (5th Cir.1986), *aff'd sub nom. Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 107 S.Ct. 2494, 96 L.Ed.2d 385 (1987). *See also Templeman*, 770 F.2d at 249–50. Thus, in Title VII cases, reimbursement for expert witness costs was traditionally limited by § 1821. *See, e.g., Denny v. Westfield State College*, 880 F.2d 1465, 1469 (1st Cir.1989).

■■■ However, in 1991, Congress amended the attorney fee provision of Title VII to allow for the additional recovery of expert witness fees. *See* Pub.L. No. 102–166, § 133(b), 105 Stat. 1071 (codified as amended at 42 U.S.C. § 2000e–5(k) (1994)). As this Court has noted, the amendment makes clear that expert witness fees in excess of § 1821 witness costs are recoverable in Title VII cases. *See Donnelly*, 946 F.Supp. at 150–151. *Accord AFSCME v. County of Nassau*, 96 F.3d 644, 645 (2nd Cir.1996), *cert. denied, County of Nassau v. AFSCME*, 520 U.S. 1104, 117 S.Ct. 1107, 137 L.Ed.2d 309 (1997). The First Circuit has not addressed this issue since the amendment and in fact has since stated cryptically in a footnote that " '[s]ection 2000e–5(k) does not alter the standard by which the court awards costs that are not attorneys' fees pursuant to Rule 54(d).' " *Phetosomphone*, 984 F.2d at 9 n. 6 (quoting *Myrick v. TNT Overland Express*, 143 F.R.D. 126, 128 (N.D.Ohio 1992)). However, that case did not involve the award of expert witness fees and this Court is certain that the plain language of the statute now provides explicit authority to award expert witness fees in Title VII cases in excess of § 1821 costs.

That said, this Court nonetheless concludes that such an award is not appropriate given the circumstances in this case. As Magistrate Judge Lovegreen noted, the only supporting documentation offered by plaintiff to justify the $2,000 expense for Dr. Purvis is an invoice dated August 6, 1997 stating "Professional psychiatric [sic] services rendered to Julia O'Rourke on August 1, 1997" and claiming a total fee of $2,000. The invoice does not state what services were rendered on that date. Neither Andrews nor DeMaria lists any time for August 1, 1997 that involves Dr. Purvis. Although Dr. Purvis did testify at trial, he did so only for a limited amount of time for which $2,000 is not a reasonable fee. Thus, this request is denied.

As for Dr. Pryor, he has submitted an invoice claiming $3,250. As a result, it is entirely unclear to the Court why plaintiff requests $6,000 in costs and it is equally unclear what services the $3,250 is meant to reimburse. As noted above, Dr. Pryor did not even testify at trial in this matter. This claim is therefore denied as there is no reasonable basis on which it can be awarded. For the same reason, Attorney Andrews' claim of $500 for a retainer for Dr. Pryor is denied.

Finally, Magistrate Judge Lovegreen recommended allowing reimbursement for the constable costs and transcript fees requested by DeMaria. Defendant did not object to that recommendation and this Court agrees that these costs were necessarily incurred as part of the litigation. Thus, constable fees of $1,387.50 and transcript costs of $7,054.00 will be allowed. The total amount is $8,441.50.

Therefore, the costs assessed against defendant City total $10,214.50.

VI. *Conclusion*

For the preceding reasons, this Court finds that plaintiff is entitled to $99,685 in attorneys' fees and $10,214.50 in costs. It

is now time to enter judgment. Judgment shall be entered for plaintiff on Counts I and II against the City of Providence in the amount of $200,000 plus 6% per annum interest calculated from June 30, 1995 (the date the action was filed) to the date judgment is entered, plus attorneys' fees in the amount of $99,685 and costs in the amount of $10,214.50. Judgment shall also be entered for the individual defendants, R. Michael DiMascolo, Manuel Costa, Alfred Bertoncini and David Cionfolo, on all Counts and for the City of Providence on Counts III, IV and V.

It is so ordered.