In re FIDELITY/MICRON SECURITIES LITIGATION

Diane Weisburgh, etc., et al.

v.

Fidelity Magellan Fund, et al.

Berger & Montague, P.C.,
et al., Appellants.

No. 98–1902.

United States Court of Appeals,
First Circuit.

Heard Feb. 4, 1999.

Decided Feb. 23, 1999.

Glen DeValerio, with whom Kathleen M. Donovan–Maher, Berman, DeValerio & Pease LLP, Stuart H. Savett, Barbara A. Podell, Savett Frutkin Podell & Ryan, P.C., Sherrie R. Savett, Gary E. Cantor, Berger & Montague, P.C., Stephen T. Rodd, and Abbey, Gardy & Squitieri, LLP were on brief, for appellants.

Before SELYA, Circuit Judge, BOWNES, Senior Circuit Judge, and LIPEZ, Circuit Judge.

SELYA, Circuit Judge.

In certain types of complex litigation, the lawyers' monetary interests often comprise a tail that wags the dog. So it is here: this dispute over the reimbursement of certain payments fronted by the lawyers is what remains of a consolidated class action (actually, an amalgam of some 16 suits) asserting claims of securities fraud. After the district court approved a global $10,000,000 settlement, the plaintiffs' attorneys filed a petition seeking 30% of the common fund in fees and approximately $277,000 in out-of-pocket expenses. The district court awarded the movants 17½% of the fund ($1,750,000) as counsel fees, but turned down their request for expenses. *See In re Fidelity/Micron Sec. Litig.*, No. 95–12676–RGS, 1998 WL 313735 (D.Mass. June 5, 1998).

In refusing reimbursement, the district court alluded to the movants' failure to provide adequate documentation to support the expense request, but it based its ruling principally on its own Standing Order Regarding Costs. The Standing Order, reprinted in the appendix hereto, states in substance that, absent exceptional circumstances, the court as a matter of practice will eschew reimbursement of certain categories of expenses. To the chagrin of the lawyers who appear as appellants here, the categories enumerated in the Standing Order (e.g., postage, facsimile transmission costs, copying expenses, telephone charges, cost of computer-assisted legal research) enveloped much of what they sought to collect. The one major exception related to the cost of retaining an expert witness. After the appellants moved for reconsideration of the expense reimbursement request and produced the expert's billing records, the district court promptly granted them the $124,000 they had spent on that front. The court remained resolute, however, as to the balance of the expenditures. This appeal followed. In it, the lawyers protest only the court's refusal to allow broader expense reimbursement.

 We begin with bedrock: in situations in which expenses are potentially reimbursable, district courts enjoy wide latitude in shaping the contours of such awards. *See In re Thirteen Appeals—San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295, 309 (1st Cir.1995). Such awards are permissible in "common fund" cases—but the district court, called upon to make awards of fees and/or expenses in such a case, functions as a quasifiduciary to safeguard the corpus of the fund for the benefit of the plaintiff class. *See, e.g.,*

*Cook v. Niedert*, 142 F.3d 1004, 1011 (7th Cir.1998). Consequently, a reviewing court has the right, if not the obligation, to view skeptically efforts by attorneys to charge substantial expenses to that account.

■ Even so, law firms are not eleemosynary institutions, and lawyers whose efforts succeed in creating a common fund for the benefit of a class are entitled not only to reasonable fees, but also to recover from the fund, as a general matter, expenses, reasonable in amount, that were necessary to bring the action to· a climax. *See Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1265 (D.C.Cir. 1993); *In re Nineteen Appeals—San Juan Dupont Plaza Hotel Fire Litig.*, 982 F.2d 603, 606 (1st Cir.1992).

■ This general rule does not give counsel carte blanche to spend freely and expect that reimbursement automatically will follow. Administration of the rule is subject to the trial court's informed discretion. Reasonableness is the touchstone, and a request that promises to yield an unreasonable result must be trimmed back or rejected outright. *See In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.*, 109 F.3d 602, 607 (9th Cir.1997) (explaining that "[r]easonableness is the goal," and that courts should avoid "mechanical or formulaic application" of rigid rules). Moreover, because each common fund case presents its own unique set of circumstances, trial courts must assess each request for fees and expenses on its own terms. *See Camden I Condo. Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 774–75 (11th Cir.1991). After all, the authority to order reimbursement from a common

fund has its origins in equity and, when a court exercises this equitable power, individualization is the name of the game. *See Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161, 167, 59 S.Ct. 777, 83 L.Ed. 1184 (1939).

■ Here, the district court's Standing Order raises a core concern: it does not leave sufficient room for individualized consideration of expense requests.[1] It may very well be that, at the end of the day, a district court will decide in most cases that the lawyers cannot justify particular kinds of expense requests. But, for the most part, that decision must be made after consideration of each particular request; it is not to be asserted beforehand upon the authority of an inflexible, informally promulgated rule.[2]

■ Due to this lack of individualized consideration, we vacate the district court's order denying expense reimbursement and remand so that the court may reconsider the request. We hasten to add that we do not equate reconsideration with compulsory reimbursement. For one thing, in percentage-of-the-fund cases, district courts may, if they so elect, set the percentage at a level which not only accounts for fees, but also suffices to cover reimbursable expenses in whole or in part. Insofar as we can tell, the district court did not take this route, but we leave open the possibility that the court did so implicitly, or that it will do so on remand. We caution, however, that such an approach requires the court to set forth specific reasons for selecting the percentage and to explain its analysis with particularity. *See, e.g., Camden I*, 946 F.2d at 775.

**1.** The record also intimates a second concern, because the appellants complain that they never knew about the Standing Order until the district court handed down its rescript rejecting their expense request. We have in the past disapproved of district courts imposing rules of practice without some form of notice that would allow the parties and their counsel to conform their conduct accordingly. *See Boettcher v. Hartford Ins. Group*, 927 F.2d 23, 25–26 (1st Cir. 1991). Since we have no way of knowing, on this meager record, what (if any) notice the court provided anent the Standing Order, and since our substantive concerns necessitate further proceedings below, *see* text *infra*, we leave for another day the extent to which *Boettcher's* analytic framework reaches situations like this one.

Withal, without any reflection on the able district judge who handled this case below, we urge the district courts as a general matter to avoid incipient problems of this type by incorporating standing orders into local rules, or, at least, making them readily available in the office of the Clerk of the district court.

**2.** To be sure, the Standing Order does permit a modicum of individualized consideration, but the isthmian exception that it carves out for "special circumstances" strays too far from the reasonableness criterion that our precedents proclaim as the standard for awarding (or refusing to award) expenses to those who have created the common fund.

■ For another thing, lawyers are not necessarily entitled to the quantum of reimbursement to which they aspire. To the contrary, they must establish the reasonableness of their requests. In the course of that exercise, the trial court may insist on examining particulars, such as receipts and logs, so that it can determine whether the claimed expenses were reasonable, necessary, and incurred for the benefit of the class. Unverified expenses may be rejected out of hand. *See Weinberger v. Great N. Nekoosa Corp.,* 925 F.2d 518, 527 (1st Cir.1991).

■ The lower court also may restrict reimbursement to those lawyers or law firms who pulled the laboring oar in prosecuting the case.[3] Equity ordinarily contemplates that those responsible for bringing home the bacon will receive repayment of expenditures made in that endeavor. This is simply another way of determining whether certain expenditures were reasonable and necessary to the creation and maintenance of the common fund.

■ There is one last matter. In their appellate brief, and again at oral argument, the appellants informed us that they seek counsel fees and expenses referable to work done in this court. On appeal, awards of counsel fees and expenses for litigating the magnitude of attorney reimbursement in common fund cases are few and far between. Although we ruled long ago that trial courts had some discretion in this regard, *see Sprague v. Ticonic Nat'l Bank,* 110 F.2d 174, 177 (1st Cir.1940), recent case law suggests that, even if a measure of discretion exists, such awards should rarely, if ever, be bestowed, *see In re Washington Pub. Power Supply Sys. Sec. Litig.,* 19 F.3d 1291, 1299 (9th Cir.1994); *United States v. 110–118 Riverside Tenants Corp.,* 5 F.3d 645, 646–47 (2d Cir.1993) (per curiam); *Lindy Bros. Build-*

ers, Inc. v. American Radiator & Standard Sanitary Corp., 540 F.2d 102, 111 (3d Cir. 1976) (en banc). The concern animating the general rule is evident: once a common fund is established, class members and class counsel wind up playing a zero sum game, in which every dollar awarded to counsel represents one dollar less that is available for distribution to class members. *See Weinberger,* 925 F.2d at 524.

In this instance, we conclude that the lawyers are not entitled to fees and expenses incurred while prosecuting the appeal. The decisive datum is that they did not render the subject services or incur the subject expenses in an effort to create or maintain the common fund. Moreover, no class member opposed their application, and the appellants have given us no good reason why, in the circumstances of this case, we should overlook the general rule that disfavors reimbursement from the common fund for appellate litigation over fees and expenses. Because the appellants' interests in this proceeding run counter to that of their clients, we reject the request for the payment of fees and/or expenses in connection with this appeal.

We need go no further. For the reasons elucidated above, we direct the district court to mull the appellants' request for expenses anew.

**Vacated and remanded.**

## APPENDIX

### STANDING ORDER REGARDING COSTS

As a matter of practice, the court does not award, unless special circumstances are shown, the following categories of costs:

---

**3.** We note in passing that the relevant provisions of the Private Securities Litigation Reform Act of 1995, Pub.L. 104–67, Title I, § 101(b), Title II, § 201(a), 109 Stat. 743, 758 (Dec. 22, 1995), codified at 15 U.S.C. § 78u–4, take a similar tack. *See id.* at § 78u–4(a)(6) ("Total attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class."). Under this proviso, "counsel for the plaintiff class" consist of the lawyers who represent the "most adequate plaintiff." *See id.* at § 78u–4(a)(3)(B)(v). Although this case appears not to implicate the Reform Act—the initial complaints were filed eleven days before the Reform Act's effective date of December 22, 1995—the district court nonetheless may find its provisions instructive.

(1) postage, express mail costs, courier fees, and the cost of electronic facsimiles;

(2) ordinary copying charges;

(3) travel expenses;

(4) the costs of deposition transcripts not used at trial;

(5) fees for clerical and word processing services;

(6) telephone charges;

(7) office supplies;

(8) exemplification costs for chalks and exhibits not used at trial;

(9) automated document preparation costs;

(10) charges for computer research services, and

(11) jury consultant fees.