**UNITED STATES of America**

v.

**William H. DAVIS, et al.**

**Ciba–Geigy Corporation, et al.**

v.

**American Cyanamid Co., et al.**

**American Cyanamid Co., et al.**

v.

**Aldrich Precision Manufacturing, et al.**

**No. 90–0484T.**

United States District Court,
D. Rhode Island.

March 14, 2000.

Downs, Rachlin & Martin, PC, by R. Bradford Fawley, S. Paul Ryan, Deacon John Holbrook, Brattleboro, VT, for United Technologies Corporation.

Lathrop & Gage, L.C., by William G. Beck, Kansas City, MO, for Browning–Ferris Industries of Rhode Island.

Law Offices of Daniel R. Prentiss, by William E. O'Gara, Providence, RI, for Jersey City, New Jersey.

Duffy & Sweeney, by Craig M. Scott, Providence, RI, for BFI Waste Systems of North America, Inc.

## MEMORANDUM AND ORDER

LOVEGREEN, United States Magistrate Judge.

Final judgment pursuant to Fed. R.Civ.P. 54(b) was entered by the district court in this CERCLA[1] matter on December 7, 1999. As part of the district court's order directing entry of final judgment, costs were awarded to United Technologies Corporation ("UTC") and to those parties whose motions for judgment as a matter of law or summary judgment were granted. These latter parties include fourth party defendant Jersey City, New Jersey ("Jersey City"), third party defendant BFI Waste Systems of North America, Inc. ("BFI"), and third party defendant Radiac Research Corporation ("Radiac").

Each of these named parties have filed a verified bill of costs. UTC seeks its costs in the amount of $111,817.43 against Chemical Control Corp., Capuano Bros., Inc., and William Davis. There is some question as to whether any of the two entities or the single individual has the financial ability to respond to UTC's bill of costs and no objection has been filed thereto.

Jersey City seeks its costs in the amount of $13,240.69 against UTC which has objected.

BFI seeks its costs in the amount of $85,646.65 against UTC. An objection has been filed by UTC.

Radiac seeks its costs in the amount of $15,660.02 against UTC which has objected.

These verified bills of costs were referred to a magistrate judge pursuant to applicable Rules and statutes[2] for the determination as to which items of cost would be allowed and the total costs to be taxed as to each party. A hearing was held on each bill of costs on March 7, 2000.

---

1. Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. §§ 9601–75.

2. 28 U.S.C. § 636(b)(1)(A); Fed.R.Civ.P. 54(d); 28 U.S.C. §§ 1920 and 1924; 28 U.S.C. § 1821; and Local Rule 25.

Before addressing the specific items of cost contained in the verified bills of costs, some general statement of the relevant law as to costs is appropriate.

*Standard*

Fed.R.Civ.P. 54(d) provides that "... costs ... shall be allowed as of course to the prevailing party unless the court otherwise directs; ...." Pursuant to 28 U.S.C. § 1920, "[a] judge or clerk of any court of the United States may tax as costs" the following:

(1) Fees of the clerk and marshal;

(2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;

(3) Fees and disbursements for printing and witnesses;

(4) Fees for exemplification and copies of papers necessarily obtained for use in the case;

(5) Docket fees under section 1923 of this title;

(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920 is significant because it "defines the term 'costs'" as used in Fed.R.Civ.P. 54(d). *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 107 S.Ct. 2494, 96 L.Ed.2d 385 (1987).

In addition, 28 U.S.C. § 1924 provides that:

[T]he party claiming any item of cost or disbursement shall attach thereto an affidavit, made by himself or his duly authorized attorney or agent having knowledge of the facts, that such item is correct and has been necessarily incurred in the case and that the services for which fees have been charged were actually and necessarily performed.

Local Rule 25(c)(1) provides:

Costs shall be taxed as provided in Rule 54(d) of the Federal Rules of Civil Procedure. A party entitled to costs shall, within 10 days after the entry of judgment, unless time is extended under Rule 6(b) of the Federal Rules of Civil Procedure, deliver to the clerk of the court and serve on the attorneys for all adverse parties, a costs statement together with a notice of application to have the costs taxed. This statement shall include a memorandum of the costs and necessary disbursement, so specifying each item that the nature of each can be readily understood, and the statement of costs shall be verified by a person acquainted therewith.

A "bill of costs" form (AO 133) is available to the prevailing party and can be obtained from the Clerk's office. This form contains the statutory language from § 1924 and eliminates the need for a separate affidavit. Here, no party seeking costs used this form, but, rather, filed an affidavit with the bill of costs complying with § 1924.

▮▮▮▮ The Court may exercise discretion when awarding the prevailing party costs and reimbursement of expenses. *See In re Fidelity/Micron Securities Litigation*, 167 F.3d 735, 736 (1st Cir.1999); *In re Thirteen Appeals Arising Out of San Juan Dupont Plaza Hotel Fire Litigation*, 56 F.3d 295, 309 (1st Cir.1995). The Court will consider the facts and equities on a case-by-case basis. *In re San Juan Dupont Plaza Hotel Fire Litigation*, 142 F.R.D. 41, 46 (D.P.R.1992). Unverified expenses and costs may be rejected out of hand. *See In re: Fidelity*, 167 F.3d at 738; *Weinberger v. Great N. Nekoosa Corp.*, 925 F.2d at 527. "The Court does have discretion to allow unverified costs where it is clear from the nature of the cost that it was necessarily incurred." *O'Rourke v. City of Providence*, 1999 WL 1132539, *5 (D.R.I.1999) (citing *Phetosomphone v. Allison Reed Group, Inc.*, 984 F.2d 4, 9 (1st Cir.1993)). But "the discretion given district judges to tax costs should be sparingly exercised with reference to expenses not specifically allowed by statute." *Farmer v. Arabian Ameri-*

*can Oil Co.,* 379 U.S. 227, 235, 85 S.Ct. 411, 13 L.Ed.2d 248 (1964). In the First Circuit, the rule is "[o]rdinarily the taxation of costs would be limited to those ordinary costs authorized by § 1920. Extraordinary costs may be allowed, however, when specifically approved by the court prior to trial." *Templeman v. Chris Craft Corp.,* 770 F.2d 245, 250 (1st Cir. 1985)(quoting *Gradmann & Holler GmbH v. Continental Lines, S.A.,* 679 F.2d 272, 274 (1st Cir.1982)).

A prevailing party within the meaning of Rule 54(d) is defined as follows:

> To be a prevailing party [a] party need not prevail on all issues to justify a full award of costs, however. Usually the litigant in whose favor judgment is rendered is the prevailing party for purposes of rule 54(d) .... A party who has obtained some relief usually will be regarded as the prevailing party even though he has not sustained all his claims .... Cases from this and other circuits consistently support shifting costs · if the prevailing party obtains judgment on even a fraction of the claims advanced.

*Head v. Medford,* 62 F.3d 351, 354 (11th Cir.1995)(quoting *United States v. Mitchell,* 580 F.2d 789, 793–94 (5th Cir.1978)) (citations omitted).

> In order to be a prevailing party under [Rule 54(d) ], the party must have succeeded " 'on a significant issue in the litigation that achieves some of the benefits the party sought in bringing the suit.' "

*Ann Howard Designs, L.P. v. Southern Frills, Inc.,* 7 F.Supp.2d 388, 389–90 (S.D.N.Y.1998)(quoting *Screenlife Establishment v. Tower Video, Inc.,* 868 F.Supp. 47, 50 (S.D.N.Y.1994)).

> [A prevailing party is] one in whose favor a judgment is rendered, regardless of whether the party has recovered its entire claim or a portion thereof.

*Garonzik v. Whitman Diner,* 910 F.Supp. 167, 168 (D.N.J.1995).

A prevailing party, for purposes of Rule 54(d), is a party in whose favor judgment is rendered. Traditionally, this means the party who won at trial, whether or not that party prevailed on all issues, and regardless of the amount of damages awarded.

*All West Pet Supply Co. v. Hill's Pet Products Division, Colgate–Palmolive Co.,* 153 F.R.D. 667, 668–69 (D.Kan.1994).

■ It is incumbent upon the party seeking costs to describe the nature of the expenses adequately or to explain why they should be awarded. *Donnelly v. Rhode Island Board of Governors for Higher Education,* 946 F.Supp. 147, 152 (D.R.I.1996).

A discussion of the law as to each type of cost sought is also in order.

*Stenographic Transcripts of Deposition and Daily Trial Transcripts*

■ 28 U.S.C. § 1920(2) permits taxation as costs "Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case." Such fees include the costs of deposition transcripts that are either introduced into evidence or used at trial. *Templeman v. Chris Craft Corp.,* 770 F.2d 245, 249 (1st Cir.), *cert. denied,* 474 U.S. 1021, 106 S.Ct. 571, 88 L.Ed.2d 556 (1985); *Donnelly,* 946 F.Supp. at 151. Even if the depositions are not introduced into evidence or used at trial, the court has the discretion to tax the costs of transcript fees if there are "special circumstances" warranting this action. *Id.* Special circumstances have been shown where the transcripts were necessary for purposes of cross examination of the adverse parties' witnesses. *Donnelly,* 946 F.Supp. at 151–52. But no special circumstances were shown with respect to the transcripts of the party's own witnesses, since they were obtained only for convenience or to be helpful to counsel. *Id.* at 152.

■] As to videotaped depositions, Fed.R.Civ.P. 30(b)(2) permits the party taking the deposition to state the method

by which the testimony shall be recorded. This would include sound, sound and visual, or stenographic means. Rule 30(b)(3) permits any party to give prior notice that another method of recording will be used in addition to the method stated in the deposition notice. A party seeking to tax the cost of a videotaped deposition must show the necessity of the videotaping and not merely convenience. *Barber v. Ruth*, 7 F.3d 636, 645 (7th Cir.1993). If a party succeeds in taxing the cost of a videotaped deposition, then that party may not also succeed in taxing the transcription thereof. One is *in lieu* of the other. *Id.*

■ As to fees for stenographic daily transcript of the trial, these are taxable if they were "necessarily obtained for use in the case." *See Holmes v. Cessna Aircraft Co.*, 11 F.3d 63, 64 (5th Cir.1994); *see also Commerce Oil Refining Corp. v. Miner*, 198 F.Supp. 895, 897 (D.R.I.1961)("It is the general rule that where a trial is long and involves complex issues and a daily transcript is obtained, the prevailing party may be allowed the cost of one copy thereof.")

*Witness Fees*

■ Section 1920(3) permits the taxation of witness fees. These witness fees are fixed by 28 U.S.C. § 1821. *Donnelly*, 946 F.Supp. at 151. Section 1821 provides for an attendance fee of $40.00 per day for "actual attendance and necessary travel plus travel expenses and a daily subsistence allowance when an overnight stay is required." *Id.* "The long standing rule is that the 'federal statute governs.'" *Templeman*, 770 F.2d at 249)(quoting *Henkel v. Chicago, St. Paul, Minneapolis & Omaha Ry. Co.*, 284 U.S. 444, 448, 52 S.Ct. 223, 76 L.Ed. 386 (1932)). Additional sums paid to expert witnesses as compensation or fees for services provided in the litigation cannot be allowed or taxed as costs in federal cases. *Id.* at 249–50; *Pizarro–De–Ramirez v. Grecomar Shipping Agency*, 82 F.R.D. 327, 328 (D.P.R.1976). However, the district court has some discretion as to taxation of costs

for witnesses, *id.* at 250, and extraordinary expenses are allowed "when specifically approved by the court prior to trial." *Id.* (quoting *Gradmann & Holler GmbH v. Continental Lines, S.A.*, 679 F.2d 272, 274 (1st Cir.1982)). Also, witness fees may be taxed for nontestifying witnesses "if the witness was ready to testify but extrinsic circumstances rendered his testimony unnecessary." *Piester v. IBM Corp.*, 1998 WL 1267929 at *2 (1st Cir.)(quoting *Nissho–Iwai Co., Ltd. v. Occidental Crude Sales*, 729 F.2d 1530, 1553 (5th Cir.1984)). And witnesses may be compensated for the days they are available to testify but are not required for testimony. § 1821(b); *Piester*, at *2; *Hurtado v. United States*, 410 U.S. 578, 584–85, 93 S.Ct. 1157, 35 L.Ed.2d 508 (1973).

*Fees for Exemplification and Copies of Papers Necessarily Obtained for Use in the Case.*

■ The cost of copies of papers may be taxed under § 1920(4) if "necessarily obtained for use in the case." Copies may be deemed necessary even if not used in the trial of the matter. *Piester*, at *2. Consequently, in order for copies to be taxable in a case, the party seeking to tax the cost must show some evidence of necessity. *Holmes*, 11 F.3d at 64. Photocopying costs for the convenience, preparation, research, or records of counsel may not be recovered. *Grady v. Bunzl Packaging Supply Co.*, 161 F.R.D. 477, 479 (N.D.Ga.1995).

Costs for exemplification have been interpreted to include demonstrative evidence such as models, charts, photographs, illustrations, and other graphic aids. *Costs and Expenses in Federal Court*, 101 F.R.D. 553, 584–85. Some courts require prior court approval before taxation of demonstrative evidence is allowed, but other courts only require the items to be necessary to an understanding of an issue and a material aid to the jury. *Id.* at 585; *Pinshaw v. Monk*, 565 F.Supp. 44, 46 (D.Mass. 1983).

The cost of preparing a wide variety of papers and physical exhibits also has been allowed, either under Section 1920 or as an exercise of judicial discretion. Among these are photostatic copies of papers, maps, photographs, charts, patents, patent drawings, surveys, motion pictures, financial summaries, and certified copies of records. As indicated in the notes, however, there are cases refusing to tax many of these expenses. The likelihood of one of these items being allowed is increased if it is used as evidence at trial or some other showing is made indicating that the expense was necessarily incurred in connection with the case.

10 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure: Civil 3d § 2677 at 453–58.

### Postage, Handling and Shipping

These expenses are not recoverable as costs under § 1920 as they are not included therein. *See Embotelladora Agral Regiomontana, S.A. de C.V. v. Sharp Capital, Inc.,* 952 F.Supp. 415, 418 (N.D.Tex.1997); *Cleveland v. North American Van Lines, Inc.,* 154 F.R.D. 37, 38 (N.D.N.Y.1994).

### UTC's Verified Bill of Costs

As previously stated, UTC seeks costs in the amount of $111,817.43 against Chemical Control Corporation, Capuano Bros., Inc., and William Davis. Here, there is no issue as to whether UTC was a prevailing party in the trial. Judgment was entered for UTC and the district court has entered an order allowing the taxation of appropriate costs against these three parties. UTC seeks costs in the categories entitled stenographic transcripts (depositions and daily transcript at trial), fees for witnesses (service of subpoena expenses plus attendance and mileage, subsistence, lodging and parking), fees paid to adversaries' experts for the taking of their depositions, and photocopying of documents and trial exhibits. I will discuss each category.

### A. Stenographic Transcripts.

In this category, UTC seeks costs in the sum of $76,710.03. In many of the depositions listed, UTC seeks costs for the taking of the deposition (stenographer's appearance fee and original transcript), a hard copy of the deposition transcript, a mini copy of the transcript with index (usually up to eight pages of deposition transcript on one page), an ASCII diskette, shipping and handling charges, and, in some cases, the cost of videotaping the deposition, expedited copy, and, in one case, "timed" transcript. UTC stated that 25 of the depositions were used at trial and the remainder were taken of parties, adverse experts, UTC's experts, records keepers, truck drivers hauling waste to the Davis site, arrangers for disposal of waste, Rule 30(b)(6) deponents, and UTC's remediation company witnesses. At the hearing, UTC offered a meritorious basis for taxing most depositions in that they were either used at time of trial or there was substantial support for finding that special circumstances warranted taxing the costs. In all but one deposition, UTC demonstrated that it was necessary for it to take or obtain a transcript of the deposition testimony because the deponent was either expected to testify at trial and UTC needed to have the deposition to determine its questioning of the witness, either direct or cross-examination, or the deposition itself was to be used in place of live testimony. During the course of discovery, UTC could not determine whether a witness would be called for testimony, but it needed to be prepared if the witness was called. I am satisfied that any prudent trial counsel would have taken or attended the depositions listed and obtained the deposition transcript for use at trial by UTC's counsel.

However, I find that UTC did not demonstrate any special circumstances warranting the taxation of the deposition of George LaCapra and, therefore, the expense of $563.75 is disallowed.

█] UTC seeks costs for the mini copies with indices, the diskettes, and, in some cases, videotapes. I find that the mini copies with indices were not "necessarily obtained for use in the case" and UTC's counsel stated that they were for the assistance of counsel for easy reference to words or phrases used in the deposition. Copies for the convenience of counsel are not taxable. The same is true for the ASCII diskettes. UTC counsel stated that due to the large number of UTC counsel taking the depositions (UTC stated that up to 14 lawyers were necessary to take and complete the depositions), the ASCII diskettes could be placed on a computer making the deposition transcripts available to all counsel quickly. Again, the diskettes are for the convenience of counsel and not necessary for use in the case. The videotape copies of the depositions, obtained in addition to the hard copies, the mini copies with indices, and the diskettes, are not necessary for use in the case. UTC's counsel obtained a hard copy of each deposition transcript, and multiple types of transcripts of the same deposition are not necessary, but are for the convenience of counsel. The fact that the various types of transcripts of the same deposition permit multiple counsel to access the transcript and to locate more easily certain testimony through indices, while admirable in that it saves the client legal time, is hardly necessary for use in the case. Consequently, I will disallow any costs for "copies with indices", ASCII diskettes, and videotape copies as unnecessary for use in the case. These disallowed costs total $11,419.50.

█ As to the cost identified as "Expedition Expense", UTC counsel stated this expense was necessary for two reasons. First, the district court set a "compressed" schedule for discovery, six months, and it was necessary to take and obtain some deposition transcripts quickly so as to apprise the multiple counsel of the contents thereof. Second, the expedited copies were often necessary because the transcript was essential for questioning in oth-

er depositions to follow, and copies were required very quickly in order to complete the discovery within the time frame established by the district court. I find that this explanation by UTC demonstrates the necessity of this expense in certain depositions, otherwise discovery would not have been timely completed. I will allow this item of cost.

█] I will disallow any cost for "shipping and handling." This item was explained by UTC counsel as the charge of the stenographer in mailing the transcript, etc. to counsel. This is no different than postage which is not an item permitted pursuant to § 1920. Consequently, I will disallow the shipping and handling costs of $1,743.04.

Lastly, as to deposition transcripts, UTC seeks $200.00 for "timed transcript." Since no explanation was forthcoming as to what this cost represents and its necessity, it is disallowed.

█ UTC also seeks $12,272.25 for its share of the cost of stenographic transcripts during two pretrial hearings before the district court, and for daily trial transcripts for the entire trial which commenced on April 6, 1998 through June 11, 1998. UTC argued that the district court requested the daily trial transcript as it would assist the court, and the parties themselves required the transcript to assist in moving the testimony along and in preparation of witnesses. UTC seeks its share of the costs for three copies of the daily transcript including one for use by the court, one for general use at trial by any party, and one for UTC's use. No one disputes that this matter was lengthy and complex, involving numerous and varied legal issues, trial exhibits, and a substantial amount of testimony. It certainly was prudent for UTC to obtain a daily transcript since it had the burden of proof and was responsible for much of the testimony and exhibits. The daily transcript was of substantial assistance to UTC in presenting this complex matter to the district

court and in keeping the testimony relevant and focused. I find that this expense was necessary within the meaning of § 1920 and will allow it.

### B. *Fees and Disbursements for Printing and Witnesses*

UTC seeks costs for constable fees incurred in serving subpoenas upon deposition and trial witnesses, as well as witness attendance fees at the rate of $40.00 per day and mileage. Section 1821(b) authorizes a daily attendance fee and § 1821(c) authorizes a mileage allowance. The sum sought by UTC as costs, $1,931.07, is within the statutory allowance and will be taxed.

Section 1821(c) and (d) authorizes parking and travel expenses and a subsistence allowance within certain constraints as set forth in the statute. UTC seeks $9,283.71 in expenses pursuant to § 1821(c) and (d) and this will be allowed as authorized by the statute.

### C. *Fees Paid to Defendants' Experts for Their Depositions*

UTC deposed two experts named by the defendants as witnesses at trial. Fed. R.Civ.P. 26(b)(4)(C) requires that the party seeking the deposition pay the experts "a reasonable fee for time spent in responding to discovery under this subdivision" and UTC paid the two experts fees totaling $7,267.54.

Section 1920 does not specifically address expert witness fees. The First Circuit rule limits taxation to those costs specified in § 1920. While this court does have some discretion, I do not find this expense to be extraordinary or necessary to exceed the limits set forth in § 1821. The cost of expert witness fees is not authorized under § 1920 and, therefore, will be disallowed as there is no showing here that UTC received prior court approval for this expense. The United States Supreme Court has held that a prevailing party cannot recover costs for fees paid to

its own experts beyond those authorized by § 1821, *Crawford,* 482 U.S. at 439, and I see no need to depart from this rule when the prevailing party paid a fee to an adverse expert witness pursuant to Rule 26(b)(4)(C). Nor have I been cited to any law supporting taxation of a similar expense. This expense is disallowed in the amount of $7,187.54 as I have no information as to the number of days each expert's deposition was taken so I am not able to award the daily rate permitted by § 1821. However, since each deposition took at least one day, I will award costs of $80.00 (each witness for one day at $40.00).

### C. *Fees for Exemplification and Copies of Papers Necessarily Obtained for Use in the Case*

In this category, UTC seeks expenses of $13,728.78 for copies of trial exhibits, demonstrative trial exhibits, and supplies for the district court's copy of exhibits; certified records fees; and costs of copying deposition transcripts taken from defendants' listed witnesses to testify at trial.

As to the trial exhibits, one copy was necessary to present to the district court for its use, one for use at trial (to be marked as part of the record), one copy for defendants' use and one copy for UTC's use. These copies, except for UTC's copy, are mandated by the district court's pretrial order and are necessary for full compliance therewith. However, UTC seeks reimbursement for only three copies of the trial exhibits.

As to the demonstrative trial exhibits, UTC prepared some enlargements of trial exhibits as graphic aids which assisted the court in deciding this matter and were necessary for use in this matter.

As to supplies for the district court's copy of UTC's exhibits, this expense was made necessary by the court's pretrial order to be furnished its own copy and is deemed necessary in order to comply therewith.

As to the certified records fees, this expense is explicitly allowed by § 1920(4).

As to copying costs, UTC must show the necessity therefore. Here, UTC argued that the district court required each of the parties to highlight in a specific color, any portion of a deposition transcript expected to be used at trial. The district court ordered that a copy of each deposition with the colored highlights be submitted to it for use during trial. Additionally, a copy was necessary for defendants and a copy for use by UTC during trial. Consequently, UTC has demonstrated the necessity for these expenses and this item of cost will be allowed.

Therefore, UTC's verified bill of costs will be allowed in the amount of $90,703.60 to be taxed against Chemical Control Corp., Capuano Bros., Inc., and William Davis.

*BFI's Verified Bill of Costs*

BFI was named as a third party defendant by UTC on a contribution claim regarding any payment by UTC beyond its fair share of the cleanup costs. BFI, in return, filed a cross-claim for contribution against the other third party defendants. BFI also contended that as to any third party defendant that settled with UTC, that third party's allocation of responsibility was then attributable to UTC. During the course of discovery, BFI incurred costs related to its defense against UTC, and in the prosecution of its cross-claim for contribution. UTC's claim against BFI was premised on the fact that BFI purchased an entity known as Macera Bros. which had previously contributed to the waste disposal at the Davis site. As such, BFI had successor liability.

Initially, BFI moved for a determination that it had no successor liability arising from its purchase of Macera Bros. This court held a hearing and filed a Report and Recommendation which recommended that the district court find that BFI did have successor liability. BFI's objection to that Report and Recommendation was heard before the district court which did not rule on whether to accept or reject the recommendation. Instead, the district court required BFI to stay in the case and to participate in the trial to determine if UTC could prove that Macera Bros. was liable for any waste disposal at the Davis site. If so, the district court would then determine the issue of successor liability. However, at the conclusion of UTC's trial testimony, the district court found that UTC had failed to prove any liability on the part of Macera Bros. and entered judgment for BFI. Consequently, there was no need to determine the issue of successor liability. But BFI did not learn until UTC's case was concluded that it would obtain judgment, that it would not be required to put on a defense, and that its cross-claim need not be proved.

A. *Stenographic Fees*

BFI seeks the sum of $37,405.13 for the cost of depositions, with multiple varied copies thereof, plus fees for a transcript of the Phase I trial (BFI was not a party and did not participate therein), and BFI's pro rata share of the daily transcript of the trial with UTC. Initially, BFI did not provide any breakdown of the expenses as to the cost of each type of deposition copy. At the hearing, I requested this breakdown which I have now received. BFI seeks $28,246.49 for Reporter's and Transcript fees, $1,221.50 for miniscript with indices, $1,258.57 for deposition exhibits, $1,465.00 for diskettes, $50.00 for timed transcript, $585.00 for video depositions, and $908.40 for shipping and handling.

I have already ruled that these depositions were necessary for use during the case, but that the costs of multiple varied copies and the shipping and handling costs were not. I allowed the cost of the stenographer's attendance fee where the deposition was taken by the party seeking costs, the cost of producing the original transcript, and the cost of one hard copy of the deposition. That reasoning and ruling applies to BFI also. Therefore, BFI is allowed costs for stenographic fees in the

amount of $28,246.49. The balance of $5,480.47 is disallowed on the basis that these costs are not within the enumerated costs in § 1920, or are not properly explained by BFI. For example, BFI lists as a cost "Deposition Exhibits" in the amount of $1,258.57. Normally, any exhibits to a deposition are included in the hard copy and the cost thereof included with the price of the hard copy. BFI has not stated why the cost of deposition exhibits would be extra and, because it is the obligation of the party seeking costs to explain each item, this item of cost has been disallowed.

 UTC has objected to BFI's deposition costs arguing that several of the depositions relate only to BFI's cross-claim which was not related to any claim by UTC and on which BFI never prevailed as the issue was never decided by the district court. However, a party may prevail even though it is successful only on a portion of its claims. Here, BFI prevailed on UTC's claim for contribution. In the course of this matter, BFI could not know that it would receive judgment at the conclusion of UTC's case, and, therefore, it had to proceed to prosecute its cross-claim and its argument that UTC was charged with the allocation of responsibility of any settling third party defendant. Since BFI's legal work in this matter was triggered by UTC's unsuccessful claim, it cannot now be said that BFI's legal work was unnecessary. Had UTC prevailed against BFI, then BFI would have been obligated to proceed with its defense and this required performing extensive legal work prior to trial. UTC should not benefit by reducing BFI's costs because it brought an unsuccessful claim which rendered BFI's defense and related costs unnecessary.

As to the $565.00 charge for a copy of the Phase I transcript, UTC objects by stating it provided BFI with a copy of this transcript without charge during discovery. However, BFI retorts by stating it ordered the copy of this transcript before UTC provided the free copy. I find that it was certainly prudent for BFI counsel to obtain this transcript as the Phase I trial determined UTC's liability and this information was essential to BFI in the trial against it. This item of cost will be allowed.

UTC further argues that deposition costs related solely to the successor liability issue should be disallowed as BFI did not prevail on this issue as this court's Report and Recommendation recommended that BFI be charged with successor liability. UTC points to several depositions and an expert fee (Creighton Hoffman) as related solely to the successor liability issue, all of which should be disallowed. UTC misunderstands the role of a magistrate judge on dispositive issues and the effect of a Report and Recommendation. A magistrate judge has no authority to rule on a dispositive motion. 28 U.S.C. § 636(b)(1)(B). The only authority is to recommend to the district court. Until the district court makes a *de novo* determination on the Report and Recommendation and accepts the recommendation, it has no effect on the case. Consequently, UTC did not prevail on this claim as it argues nor did BFI lose this claim as the district court never ruled on BFI's objection to the Report and Recommendation. Since BFI did prevail on UTC's contribution claim, BFI's total costs should be allowed as authorized by § 1920. Therefore, stenographic costs in the sum of $28,811.49 will be allowed.

B. *Fees and Disbursements for Printing and Witnesses*

BFI seeks costs for constable fees incurred in serving subpoenas upon deposition and trial witnesses, as well as witness attendance fees at the rate of $40.00 per day plus mileage. Section 1821(b) authorizes the daily attendance fee and § 1821(c) authorizes a mileage allowance. The sum sought by BFI for these costs, $6,231.84, is within the statutory allowance and will be taxed.

BFI also requests the sum of $8,455.50 for fees paid to UTC's expert witnesses for attendance as their depositions taken by BFI. These fees are required pursuant to Rule 26(b)(4)(C), but they are not taxable. I rely upon the same reasoning given in UTC's request for similar expert witness fees and the reader is referred to that portion of this decision.

C. *Fees for Exemplification and Copies of Papers Necessarily Obtained for Use in the Case*

BFI seeks expenses of $33,554.17 for copies of trial exhibits; editing of videotaped depositions; pro rata share for copies prepared by liaison counsel; and for certified records fees.

As to the copying of trial exhibits, BFI seeks $27,066.47 for three copies which were mandated by the pretrial order to be provided to the court, to UTC, and to liaison counsel for use by other third and fourth party defendants. BFI does not seek to recover expenses for its own copy. As previously stated, this matter was lengthy and complex, involving many varied issues of liability and damages concerning disposal of waste material at the Davis site. Each party had voluminous exhibits to offer at trial on each issue, and the district court's pretrial order required copies to be provided prior to trial. Consequently, an original and three copies of these exhibits were necessary for full compliance with the pretrial order. Therefore, the sum of $27,066.47 for copies of trial exhibits will be allowed.

UTC has objected to the taxing of this expense on the same ground on which it based its objection to the stenographic fees: that many of the exhibits and, therefore, many of the copies, were related only to BFI's cross-claim on which BFI did not prevail as the district court did not reach this issue. I reject this argument for the same reasons provided in the section on BFI's stenographic fees. BFI's legal work on the cross-claim was made necessary by UTC's contribution claim against BFI. Any copies related to BFI's cross-claim were made necessary by UTC's claim and the expense should not be avoided by UTC because it could not prove its contribution claim against BFI. BFI's expenses were made necessary by the fact that UTC brought a contribution claim which had no basis in fact.

As to the expense of editing videotaped depositions, BFI seeks the sum of $584.22 for the use of outside editing services. I have previously disallowed the cost of the videotaped depositions as they represented multiple copies of the same deposition, were unnecessary as BFI had a hard copy of the deposition transcript, and were prepared for the convenience of counsel. Consequently, I will disallow this expense.

As to BFI's pro rata share of exhibit copying costs paid by liaison counsel during March and April 1998 in preparation for trial, BFI seeks the sum of $5,440.43. UTC objects stating that BFI was not part of the liaison counsel group, was not obligated to pay any share of these expenses, and that the district court's pretrial order required liaison counsel to provide copies to all counsel without charge. BFI's counter argument was quite confusing. Basically, BFI argued that it did not require its own copy of liaison counsel exhibits, but, somehow, it was obligated to pay this amount to liaison counsel. Quite frankly, I do not accept BFI's argument as to this expense. BFI stated that it had to supply a complete copy of its trial exhibits to liaison counsel without charge, and sought and received this cost as part of its bill of costs. In like manner, I do not comprehend why liaison counsel would not have to supply a full copy of its trial exhibits to BFI without charge. I do not find that this cost was necessary and I will disallow it.

As to certified records fees, BFI seeks $463.45. This expense is explicitly allowed by § 1920(4), it is reasonable, and the records listed appear to be necessary. I will allow this cost.

Therefore, BFI's verified bill of costs will be allowed in the amount of $62,573.25 to be taxed against UTC.

*Jersey City's Verified Bill of Costs*

A. *Stenographic Fees*

Jersey City, as a member of the liaison group, seeks costs in the amount of $1,893.32 for its pro rata share of the liaison counsel's costs for certain deposition and trial transcripts pursuant to § 1920(2). I have previously found that these costs were necessary and this expense will be allowed.

B. *Fees for Exemplification and Copies of Papers Necessarily Obtained for Use in the Case*

In this category, Jersey City seeks costs for three items of expense. First, Jersey City seeks $891.80 for "document production." Second, the City seeks costs in the amount of $2,500.00 for unidentified copies apparently made by "Jersey City Law Department." Third, the City seeks $7,955.57 for "monthly photocopy charges." UTC has objected to the taxing of costs as to each of these items of expense.

Jersey City argues that the first two items "reflect photocopies made by both the City's counsel and the City's Law Department as part of the City's defense. The City prepared numerous witnesses as part of its case-in-chief and provided many past and present City officials, among others, with copies of trial exhibits." *Jersey City's Reply Mem.* at 1–2. Further, the City stated that "[t]rial preparation necessarily entailed a large volume of photocopying such as documents related to the demographics and financial condition of the City. The cost of preparing this trial defense is partially reflected in the $891.80 and $2,500.00 charges. The $891.90 charge also includes the costs to make duplicate copy sets of the City's document production for use by the City's Law Department, liaison counsel, opposing counsel and trial counsel." *Id.* at 2.

UTC argues that the City's bill of costs is not specific or detailed enough to permit the court to determine whether the expenses sought are reasonable and necessary. Local Rule 25 requires the party seeking costs to prepare a costs statement which "shall include a memorandum of the costs and necessary disbursement, so specifying each item that the nature of each can be readily understood, . . . ." Local Rule 25(c)(1).

■ Jersey City's verified bill of costs, as to the first two items, fails this requirement. However, the City's reply memorandum provides some information as to these items. The expense of $891.80 represents copies of documents made as part of the City's defense at trial. An unknown number of copies were supplied to City officials, past and present, presumably to prepare them for trial testimony. The second item, $2,500.00, is explained in part as documents supporting the City's defense related to demographics and its financial condition. The City argues that this defense is based in law. Copies of these documents were supplied to "the City's Law Department, liaison counsel, opposing counsel and trial counsel" for their use in this matter. Even assuming that these copies related to the City's defense and that defense had some basis in law, the entire volume of documentation would not be necessary. Copies made for preparation of the City's witnesses, or for the convenience of the City's counsel, are not necessary and the costs are not taxable. While some of the itemized photocopying expenses may be taxable, I cannot make that determination based upon the sparse information supplied in the City's verified bill of costs and/or reply memorandum. For example, the cost of copies supplied to liaison counsel and opposing counsel would ordinarily be a necessary expense, but I am unable to determine the cost associated with these copies from the limited information supplied by the City. Consequently, the expenses of $891.80 and $2,500.00 are disallowed.

The third item is entitled "monthly photocopy charges" and, based upon the City's reply memorandum, these represent pro rata charges assessed by liaison counsel against the City as the City was a part of this group. UTC objects and, in particular, objects to the amounts for March and April 1998. The City contends that these expenses were assessed to it as a member of the liaison group and the March/April 1998 charges were the pro rata share of the trial exhibits prepared by liaison group counsel. I have previously held in UTC's verified bill of costs that it could recover those charges for copying trial exhibits and other necessary documents supplied to the court and opposing counsel. These charges appear to be similar. The reason for the sharp increase in costs for copying in March/April 1998 is that the trial was about to commence and the parties were preparing their voluminous trial exhibits in compliance with the pretrial order. Therefore, these charges represent necessary copies. The charge of $7,955.57 for monthly photocopy charges will be allowed.

Therefore, Jersey City's verified bill of costs will be allowed in the amount of $9,848.89.

### Radiac's Verified Bill of Costs

#### A. Stenographic Fees

Radiac seeks expenses in association with the taking of certain depositions in this matter. Radiac breaks these expenses into transcript fees, copies with indices, exhibits, ASCII diskettes, and shipping and handling. When questioned at the hearing, Radiac stated that the expenses listed were for the full costs and not Radiac's pro rata share. Radiac stated that its share would be calculated at 1/25th of the total cost. Radiac lists the total cost of the deposition transcripts as $3,206.25 and 1/25th of that amount would be $128.25. The remaining charges as to the various depositions will be disallowed based upon my ruling in UTC's verified bill of costs as to similar items. I find that

one copy of the deposition transcript is necessary, but that multiple and varied types of copies of the same deposition are not. Consequently, I will allow costs for deposition transcripts in the amount of $128.25.

As to court reporter fees, Radiac filed a motion for summary judgment which apparently was heard on February 26, 1998 before the district court and Radiac was successful in this motion. Judgment was entered for Radiac prior to trial. For unknown reasons, Radiac ordered a copy of the transcript of the hearing on its summary judgment. I know of no necessity for this and Radiac has not offered any. This transcript appears to be for the use of Radiac counsel and for their convenience, and is, therefore, not allowed under § 1920. The expense of $336.00 is disallowed.

#### B. Fees for Exemplification and Copies of Papers Necessarily Obtained for Use in the Case

Radiac seeks a total of $33.00 for photocopying charges related to its motion for summary judgment. Certainly, Local Rule 12 requires duplicates copies of the motion papers to be filed with the Clerk. Consequently, these charges are necessary and will be allowed.

#### C. Fees for Expert Assessments for Joint Defense Work

Radiac seeks $11,159.62 for charges incurred in three expert assessments. Radiac explains these charges as its pro rata share for two expert witnesses retained by liaison counsel to testify at trial as to the condition of the Davis site and the remediation as well as the allocation of liability among the responsible parties. These charges were incurred by Radiac prior to receiving its summary judgment, and there is no showing here that prior court approval was obtained to retain the experts.

I have previously discussed a similar charge in UTC's bill of costs. Fees paid to

expert witnesses are not taxable over the statutory amount set in § 1821. Radiac has provided no amount for expert witness fees that would comply with the statute. Consequently, the expert witness fees in the amount of $11,159.62 are disallowed.

Therefore, Radiac's verified bill of costs will be allowed in the amount of $161.25 to be taxed against UTC.

### Conclusion

In summary, the verified bills of costs will be allowed as follows:

(1) UTC's verified bill of costs will be allowed against Chemical Control Corp., Capuano Bros., Inc., and William Davis in the amount of $90,703.60;

(2) BFI's verified bill of costs will be allowed against UTC in the amount of $62,573.25;

(3) Jersey City's verified bill of costs will be allowed against UTC in the amount of $9,848.89; and

(4) Radiac's verified bill of costs will be allowed against UTC in the amount of $161.25.

So ordered.